UNITED STATES v. ONE 1949
BUICK SEDANETTE et al.
Misc. Civ. No. 51–88.

United States District Court,
D. Massachusetts.
May 6, 1953.

George F. Garrity, U. S. Atty., and C. J. Kalinauskas, Asst. U. S. Atty., Boston, Mass., for plaintiff.

James W. Kirk, Boston, Mass., for claimants Peter Panagiotakos, Arhontoula Panagiotakos and Peter Pappas.

FORD, District Judge.

In this action the United States is proceeding against one 1949 Buick Sedanette and certain other personal property seized on the premises of one Arthur V. Berthiaume, Sr., in Tewksbury, by agents of the Alcohol Tax Unit of the Bureau of Internal Revenue. Peter C. Panagiotakos, the owner of the seized vehicle, has moved to dismiss the libel as against the vehicle.

During several weeks preceding the seizure of the Buick, it had been under observation by the agents, who had several times seen Panagiotakos use it to drive himself and others to the Berthiaume property. This property, which was also placed under observation, consisted of a tract of land mostly wooded, on Pinochle Street, in Tewksbury. There was a dirt road on the premises leading from Pinochle Street. The principal buildings were located along this road, the first, proceeding from Pinochle Street, being a small out-building, the second, the Berthiaume dwelling, and, the third, an 18 by 30 foot building located 150 yards farther into the woods on a branch of the dirt road.

On October 2, 1951, investigator Tobin, who was observing the premises from the surrounding woods, detected an odor of fermenting mash coming from the third building from the street. On October 3, he obtained a warrant for the search of premises described as "the first building on the left hand side of the dirt road as you proceed down the dirt road from Pinochle Street."

On October 6, 1951, Tobin, with B. W. Fletcher, head of the Alcohol and Tobacco Tax Division for the district, and two other investigators, entered the property with this warrant. They searched the first building from Pinochle Street and found there a five-gallon still, which was not in use, and some tools. They then approached the third building from which they again detected a strong odor of fermenting mash. Entering this building they found and seized three 1600-gallon mash vats, one containing about 1500 gallons of mash, some empty five-gallon cans, an oil burner, a boiler, a pump and a set of chain falls, ten bags of sugar, fifteen pounds of yeast and 750 gallons of fuel oil.

No one was on the premises when the agents arrived and began their search. During the period of the search, Berthiaume, the owner of the property, returned with his truck in which was a large still pot. About fifteen minutes later Panagiotakos entered in his Buick, (the car involved in this proceeding) having one Sciuto with him. In the car was a change of clothing and a pipe cutter. Among the keys on the key ring taken from the switch of the Buick was one which fitted the lock on the door of the third building. Panagiotakos had in fact helped to erect this third building and leased this building from Berthiaume. Earlier that day he had been with Berthiaume at a boiler works where he helped to load the still pot which Berthiaume had brought back to the property on his truck.

The motion to dismiss the libel as to the Buick is based on the contention that it was seized illegally. The libel sets forth five sections of the Internal Revenue Code,

26 U.S.C., under which it purports to proceed, viz., §§ 2810(a), 2833, 3116, 3321, and 3720(a). Section 2810(a) is inapplicable here since it deals with the requirement that "any still or distilling apparatus set up" shall be registered. A still was found in the first building but there has been no evidence to show that there was any connection between this still and Panagiotakos or his car. No still was found in the third building. Certain parts adapted for use in a still were there, but in the absence of any column or condenser, both essential parts of a still, it cannot be found that there was any "still or distilling apparatus set up". Similarly, while there may have been abundant evidence of plans and preparations for engaging in the business of distilling, in the absence of any still, and even of all the necessary parts to set up a still in operation, it cannot be said that Panagiotakos and his associates had as yet begun to carry on the business of a distiller without giving bond so as to be subject to the penalties of § 2833.

■■ It cannot be held that the vehicle in question here was used or intended for use in violating the internal revenue laws within the provisions of § 3116. The only evidence as to the use of the Buick in connection with these activities was that Panagiotakos used it to transport himself and others to the scene of their operations. This is not use "in violating the revenue laws." United States v. Lane Motor Co., 344 U.S. 630, 631, 73 S.Ct. 459, 460. Similarly there was nothing to show that the Buick was ever used in the removal or for the deposit or concealment of goods or commodities within the terms of § 3321.

However, there is abundant evidence to show that what was found in the third building included materials covered by § 3720(a) (2), which provides:

"(a) Property subject to seizure and forfeiture

.*    *    *    *    *    *

"(2) Raw materials. All raw materials found in the possession of any person intending to manufacture the same into articles of a kind subject to tax for the purpose of fraudulently selling such manufactured articles, or

with design to evade the payment of said tax, may also be seized, and shall be forfeited as aforesaid."

The following subsection (3) provides:

"(3) Equipment. All tools, implements, instruments, and personal property whatsoever, in the place or building, or within any yard or inclosure where such articles or raw materials are found, may also be seized, and shall be forfeited as aforesaid."

Panagiotakos' Buick which was driven into the yard near this building might, therefore, be subject to seizure incident to a lawful search of the third building and the seizure of the materials found therein.

■ The legality of the seizure of the Buick depends, therefore, on the lawfulness of the search of the third building. The warrant obtained by the agents was directed solely to a search of the first building. As has been pointed out, no connection has been shown between this building and the still found therein and the Buick to justify the seizure of the car. The warrant gave no justification for any search of the third building, since it is limited to the premises particularly described therein, and cannot authorize a general search of nearby buildings not described. United States v. Wroblewski, 7 Cir., 105 F.2d 444, 446.

■ The prohibition of the Fourth Amendment, of course, is directed not against searches and seizures without a warrant, but against searches and seizures which are unreasonable. It is the contention of the United States that the action of the agents with respect to the third building was under the circumstances justifiable without a warrant, on the ground that when, on October 6, the agents approached the third building and detected the odor of mash, they had reasonable ground for believing that a violation of law was being committed in their presence, and that they were, therefore, justified in searching the third building without any warrant.

■ This contention of the government cannot be upheld. As a general rule, the presence of a distinctive odor, as of fermenting mash, while it may constitute sufficient grounds for belief in the existence

of a criminal activity on the premises to justify a magistrate in the issuance of a search warrant, does not in itself justify the investigating officers in entering and searching without a warrant. The Fourth Amendment requires that ordinarily the judgment as to whether a search is reasonably justified in such circumstances is to be that of the impartial magistrate empowered to issue a search warrant, and not that of the investigating officer who makes the discovery. Johnson v. United States, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436; Taylor v. United States, 286 U.S. 1, 6, 52 S.Ct. 466, 76 L.Ed. 951.

In the present case there was certainly no compelling reason for dispensing with the requirement of a search warrant. On October 2, four days before the search took place, the officers had detected the distinctive odor of fermenting mash and identified the third building as the source from which it emanated. There was ample time to procure a proper warrant—in fact a warrant for the search of the first building was obtained and in the hands of an agent for three days before they acted. The fact that the odor was still present on October 6 when they again approached the third building affords no additional justification for their action. Indeed, if that had been the first occasion on which the third building had been identified as the source of the odor, or if the investigators had then noticed for the first time that the warrant did not authorize search of the third building, there would still have been no emergency. There was nothing to indicate any danger that any evidence would be destroyed or removed. Up to that time none of the persons connected with the suspected illegal activity was even present on the premises. There were four officers present, so that the building could easily have been guarded while a proper search warrant was obtained. In such circumstances the search and seizure without such a warrant was without legal justification. United States v. Jeffers, 342 U.S. 48, 52, 72 S.Ct. 93, 96 L.Ed. 59; McDonald v. United States, 335 U.S. 451, 454, 69 S.Ct. 191, 93 L.Ed. 153; Trupiano v. United States, 334 U.S. 699, 705, 68 S.Ct. 1229, 92 L.Ed. 1663. The search of the

building having been illegal, the seizure of Panagiotakos' car incident thereto was equally unjustified.

The motion to dismiss the libel is allowed as to one 1949 Buick Sedanette, Engine No. 53890495, Serial No. 15190136.