Jimmie GRIFFIN and Ray Stearns Moore, Appellants,

v.

**UNITED STATES of America,** Appellee.

No. 7921.

United States Court of Appeals Fourth Circuit.

Argued June 26, 1959.

Decided Sept. 2, 1959.

Frazier Woolard, Washington, N. C. (LeRoy Scott, Washington, N. C., on the brief), for appellants.

Irvin B. Tucker, Jr., Asst. U. S. Atty., Raleigh, N. C. (Julian T. Gaskill, U. S. Atty., Goldsboro, N. C., on the brief), for appellee.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and THOMSEN, District Judge.

HAYNSWORTH, Circuit Judge.

Griffin and Moore were convicted of making mash, of carrying on the business of a distiller without having given the bond required by law and of possession of materials intended for use in violation of the Internal Revenue laws. The indictment is phrased generally in the language of 26 U.S.C.A. §§ 5216(a) (1), 5606 and 5686(b), the indictment containing a separate count charging a violation of each of those sections.

The two men were discovered at the site of an old still where there was water available. At the site there were twenty-five 55-gallon fermenter barrels, a copper muffler condenser, a one-cylinder water pump, a gas burner, a copper gas line, 60 feet of one and one-half inch rubber hose, and miscellaneous pipe, hose and fittings. Two of the fermenter barrels contained approximately seventy-five gallons of freshly kerneled, ripe peaches.

There were also fifty bushels of uncrated peaches in the area and seventeen empty peach crates.

We are first met with the question of whether or not the two men may be said to have made mash fit for distillation within the meaning of § 5216(a) (1). We think not.

The barrels containing the kerneled peaches also contained some liquid, but the investigators were uncertain whether this liquid was the juice of the peaches or water. They agreed that the peaches were freshly kerneled and had not begun to ferment.

Webster's New International Dictionary defines mash, as used in the brewing and distilling trades, as "crushed malt, or meal of rye, wheat, corn, etc., steeped and stirred in hot water to produce wort." Mash, as the term is defined and generally understood, refers to a mixture in which grain is the basic, or an essential, ingredient. We have been referred to no instance in which the term has been applied to a fresh fruit, or to a fruit pomace, intended for use in the manufacture of brandy. It may be that if the possession of mash intended for distillation is a specific offense, the possession of fresh fruit for the same purpose should be made a specific offense, but the two situations are not wholly comparable as the Congress has recognized in extending certain exemptions to distillers of fruit brandy.[1]

The differences which justify the permissive exemptions of distillers of fruit brandy authorized by § 5215 supply, perhaps, the reason Congress restricted § 5216(a) (1) to the production of grain mixtures. At the least, however, we find no basis upon which we can expand the criminal sanctions of § 5216(a) (1) to reach the removal of the kernels of fresh fruit when the words of the statute, itself, given their usual and well understood meaning, are more limited.

The second count of the indictment charged the defendants with engaging in the business of a distiller without having posted the requisite bond. If, as appears, the peaches were the raw material from which the defendants intended to produce brandy, one might reason that they entered upon the business of a distiller as soon as they began the first process of production, though the still was not then set up. Most of the essential parts of the still were there and there was abundant time to assemble and complete it while the peaches were fermenting. See Rewis v. United States, 5 Cir., 242 F.2d 508. Congress, however, has defined a distiller in § 5002(a):

> "Distiller.—Every person who produces distilled spirits from any source or substance, or who brews or makes mash, wort, or wash, fit for distillation or for the production of spirits, or who, by any process of evaporization, separates alcoholic spirits from any fermented substance, or who, making or keeping mash, wort, or wash, has also in his possession or use a still, shall be regarded as a distiller."

Here the defendants had done nothing which would make them distillers within the statutory definition. The jury was warranted in finding that they had the intention of entering into that business, but those acts which would serve as a basis of a finding that they were distillers within the meaning of the statute were still in contemplation. None of the enumerated acts had been performed. Doubtless Congress had in mind the fact that one intending to comply with the law by filing the necessary bonds, should not be charged with criminal violations when he assembles raw materials, innocent in themselves, in anticipation of his compliance with all of the requirements for the lawful operation of a distillery.

We held in Liverman v. United States, 4 Cir., 260 F.2d 284, that one found at the site of a still, largely dismantled, and with much spent and some live mash in his possession could not be found

---

1. See 26 U.S.C.A. § 5215.

# 906

guilty under § 5606 of engaging in the business of a distiller without the requisite bond. There was nothing to connect Liverman with the site at the time the still was in operation and the evidence indicated that distilling operations at that site had been abandoned. Under the circumstances of this case where the apparent intention of the defendants was to set up a still to make brandy from the peaches they were beginning to process, a still set up within the meaning of § 5174 may not be a prerequisite to a conviction under § 5606, but that section does not reach activity so remote from the actual process of distillation as that in which the defendants were here engaged. See United States v. One 1949 Buick Sedanette, D.C.Mass., 112 F.Supp. 218. Since, at the time of their arrest, they were not distillers within the definition of § 5002, we hold that they were not shown to have violated § 5606.

As to the third count of the indictment, the defendants make no contention that the evidence was insufficient to sustain their conviction. They could not do so with reason.

·  They do say the third count is deficient in not specifying the manner in which the defendants intended to use the peaches and the enumerated components of the still. This count does not in so many words charge that these materials were possessed with the intention of making peach brandy, but that is the necessary implication of the words used. We find no deficiency in the indictment.

■ Finally, the defendants find fault with the complaint upon which the arrest warrant was issued. There was no search here, and there is no question of the admissibility of evidence obtained incident to the arrest.[2] Now, after a trial upon an indictment by the Grand Jury, it is too late to question the technical sufficiency of the original arrest warrant.

■ Though we conclude that the defendants were entitled to judgments of acquittal on the first two counts, we do not find that the submission of those issues could have prejudiced the jury in its consideration of the third count. The District Court, however, imposed a general sentence, which we cannot separate. The case therefore, will be remanded so that the defendants may be sentenced upon their conviction on the third count only.

Affirmed in part; reversed in part and remanded.

2. Cf. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503.