**UNITED STATES of America**

v.

**ONE 1959 CHRYSLER FOUR-DOOR SE-DAN SARATOGA, Motor No. MR 38314718 Together With its Tools, Accessories, Appurtenances, Special Equipment, and Appliances.**

**Misc. Civ. No. 60-27.**

United States District Court
D. Massachusetts.

July 12, 1961.

Arlyne F. Hassett, Asst. U. S. Atty., Boston, Mass., for plaintiff.

Francis J. DiMento, Boston, Mass., for defendant.

JULIAN, District Judge.

The United States brings this proceeding to enforce the forfeiture of an auto-

mobile alleged to have been used in violating the provisions of the federal wagering tax laws.

█ The automobile, a 1959 Chrysler four-door sedan bearing 1959 Massachusetts registration number K20050, was seized without a warrant on October 30, 1959, on a public way in front of Bartolo's Ringside Cafe at 197 Summer Street, East Boston, Massachusetts, by a delegate of the Secretary of the Treasury who purported to act under sections 7302 and 7321 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 7302, 7321.[1] The automobile was owned by Joseph Interbartolo, who is the sole claimant.

I find on uncontradicted testimony that the business of accepting wagers was being carried on in the Cafe from October 6 to October 28 or 29, 1959, the period during which the premises were kept under surveillance by special agent Sawtelle of the Internal Revenue Service. Number pool wagers were being accepted on the first floor by Sal Bartolo, who operated the Cafe, and by the bartender. A third individual on the second floor accepted wagers on horse races.

Agent Sawtelle has had long experience in the investigation of the wagering business and is quite familiar with the manner in which such business is conducted and with the practices followed by those who are engaged in it. According to his uncontradicted testimony, which I accept as true, it is the practice in the wagering business to put the betting slips and adding-machine tapes showing current and steady play respectively into white and brown envelopes and to have them taken to another location for processing. This was the practice followed by those conducting the wagering business at the Cafe. The betting slips and tapes picked up in white and brown envelopes at the Cafe were taken by automobile to a blind in East Boston known as Chick's Bargain Shoe Store where they were processed.

From October 6 to October 13, 1959, agent Sawtelle saw the automobile involved in this proceeding parked from time to time on Summer Street in front of the Cafe, or on Lewis Street near the Cafe.

Wagers were being accepted at the Cafe during the afternoon of October 13, 1959. Late that same afternoon a young man came into the Cafe and received from the bartender white and brown envelopes containing betting slips and tapes representing the play. He put these in his pocket, left the Cafe, entered the automobile here involved, which was parked in front of the Cafe, and drove off.

On October 15 the agent again saw the same automobile parked in front of the Cafe. About an hour later he saw it at the rear door of Chick's. The same young man who had driven the car on October 13 got out of the car and went into Chick's. When the agent left forty-five or fifty minutes later, the young man had not come out and the car was still parked at the rear door of Chick's. The agent, however, did not see any wagering materials in his possession on this occasion.

The claimant is a brother of Sal Bartolo, the operator of Bartolo's Ringside Cafe. During the period of the investigation agent Sawtelle saw the claimant in the Cafe on several occasions when wagering activity was in progress. The claimant was present in the courtroom during the trial of this libel but did not testify. I find that he knew that his automobile was being used to transport betting slips and tapes from the Cafe and that he permitted it to be used for that purpose.

It was stipulated that no wagering tax stamp under section 4411 of the Internal Revenue Code of 1954, 26 U.S.C.A. §

---

1. "Sec. 7302. It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property. * * *"

"Sec. 7321. Any property subject to forfeiture to the United States under any provision of this title may be seized by the Secretary or his delegate."

4411 was ever purchased by either the claimant, or Sal Bartolo, or the bartender, and that no person ever registered 197 Summer Street, East Boston, Massachusetts, the location of Bartolo's Ringside Cafe, as the place where a wagering business was to be carried on.

I find that the young man who used the automobile in question to transport the betting slips and adding-machine tapes from the Cafe did so with the knowledge, consent and authority of those who were carrying on the business of accepting wagers at the Cafe and that the transportation of the betting slips and tapes from the Cafe to Chick's Bargain Shoe Store was an integral part of the wagering business that was being conducted at the Cafe.

▪ Since in transporting the betting slips and tapes the young man was acting for persons who were engaged in the wagering business and who had neither paid the special occupational tax imposed by section 4411 of the Internal Revenue Code of 1954, nor registered the place of business with the internal revenue district as required by section 4412 of the Code, 26 U.S.C.A. § 4412, I find that the automobile was used on October 13, 1959, in violating the internal revenue laws. The fact that the young man himself may not have been liable for the occupational tax under section 4411 did not render the automobile immune to forfeiture.

▪ The claimant contends that since the automobile was seized without a warrant the seizure was unlawful and an action for its forfeiture cannot be maintained. In support of his position he cites Trupiano v. United States, 1948, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663; United States v. Jeffers, 1951, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59; and United States v. One 1949 Buick Sedanette, D.C.Mass.1953, 112 F.Supp. 218. These cases are inapplicable to the facts of the present case.

An automobile that has been used in violating the internal revenue laws may be seized without a warrant on a public way by a delegate of the Secretary of the Treasury even though, as in the case before me, there was an interval of seventeen days between the time the investigating agent observed the automobile being used in violating those laws and the time it was seized. United States v. One 1956 Ford, 4 Cir., 1958, 253 F.2d 725.

In Sanders v. United States, 5 Cir., 1953, 201 F.2d 158, and in United States v. Carey, 5 Cir., 1959, 272 F.2d 492, the court held that the Fourth Amendment does not guarantee against seizures in a proceeding such as this where there is no need of a search and the right to the property has passed to the United States by forfeiture. In Carey, at page 494, the court states:

"The seizure of property, the title to which has been forfeited to the United States, is to be distinguished from the exclusion of evidence secured through an unlawful search and seizure. In the one case the Government is entitled to the possession of the property, in the other it is not."

▪ The claimant cites United States v. Lane Motor Co., 1953, 344 U.S. 630, 73 S.Ct. 459, 97 L.Ed. 622, for the proposition that the automobile must be used in violating the revenue laws and not in some activity only indirectly related. In that case it was found that the government had not shown, as it had alleged, that the vehicles seized had been used for transporting materials or utensils for use at the distillery. The Supreme Court held that "a vehicle used solely for commuting to an illegal distillery is not used in violating the revenue laws." In the case before me, however, the automobile was used to transport betting slips and tapes directly connected with the operation of the illicit business of accepting wagers and not merely for commuting to or from the Cafe. Substantially the same distinction is drawn by the court in United States v. General Motors Acceptance Corporation, 5 Cir., 1956, 239 F.2d 102, which involved the forfeiture of a truck under section 7302 of the Internal Revenue Code. While acknowledging the authority of United States v. Lane Motor

Co., supra, the court states, 239 F.2d at page 104:

"The rule is different, however, where the vehicle is used not merely for the convenience of the operator in commuting, but also as an active aid in violating the revenue laws, even though not for the transportation of any commodities subject to seizure."

In Nocita v. United States, 9 Cir., 1958, 258 F.2d 199, the court held that the use of an automobile for the transportation of a sum of money which was the product of prior wagers was such a use as to constitute the automobile an instrumentality in the business of accepting wagers within the meaning of sections 4401, 4411, 4412 and 7262 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 4401, 4411, 4412, 7262 and to render it subject to forfeiture pursuant to section 7302.

The automobile which is the subject of this proceeding was used in violating the provisions of the internal revenue laws and was lawfully seized. It is therefore declared forfeited to the United States.

Judgment will accordingly be entered for the United States.