79 N.J. Super. 442 (1963)
191 A.2d 793
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS LEE NOBLES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 20, 1963.
Decided June 13, 1963.
*443 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Stanley H. Needell argued the cause for appellant.
Mr. C. William Caruso, Assistant Prosecutor, argued the cause for respondent (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney; Mr. Caruso, of counsel and on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
Defendant appeals from a County Court judgment of conviction, entered upon a jury verdict of guilty, for illegally possessing and dispensing narcotics. R.S. 24:18-4.
*444 The essential facts revealed at the trial are as follows. Thomas Monahan, a detective of the Newark Police Department assigned to the narcotics squad, testified that on April 14, 1960 at about 10:15 A.M. he was on regular duty in a police car on Quitman Street, Newark, with detectives Howard and Carr. He observed Rufus Hawk walking along Quitman Street, and at the nearby corner of Monmouth Street and Waverly Avenue Hawk met Wilbert Collins. On cross-examination, Monahan admitted that Hawk appeared to be normal. The only distinguishing fact was that Hawk was known by Monahan to be a "narcotic addict." Monahan stated that he did not know Collins.
As Hawk and Collins were walking along the street, the detectives stopped and searched Collins, finding "ten decks of suspected heroin" in his left-hand trouser pocket. William R. Seligman, a chemist for the Newark Police Department, later testified that he had analyzed the contents of two of the ten "decks" or small glassine paper envelopes taken from Collins and found that they contained heroin. Hawk and Collins were arrested and taken to police headquarters. Defendant was later taken into custody at "a bar on Waverly Avenue and Avon Place" and was also brought to headquarters.
According to Monahan, Collins in the course of being questioned accused defendant of giving him the narcotics earlier that morning at Collins' home. Collins was to sell "the ten decks" at $5 a piece, retaining $2 per envelope and paying defendant the balance. Collins, in defendant's presence, gave the police a written statement describing the alleged transaction with Nobles. Monahan testified that defendant denied the accusation and refused to give any statement. The Collins statement was received in evidence without objection.
Detective Theodore Howard's testimony substantially corroborated Monahan's description of the arrest of Hawk and Collins and the questioning at police headquarters. He described apprehending defendant at the Cotton Club, a bar on *445 the corner of Waverly Avenue and Avon Place, at about 1 P.M. of the same day (April 14, 1960). Howard further testified that when Collins' statement was read in the presence of Nobles, he made no comment.
Shirley Collins testified that she was the sister of Wilbert Collins and at the time they both resided at 155 Quitman Street. She stated that Nobles came to their home on April 14 at about 10 A.M. and asked to speak to Wilbert. She called her brother, who then had a conversation with defendant on the front porch. She did not overhear what they said. In the course of the trial, she identified Nobles as the man who called at her home to see her brother.
Rufus Hawk stated that on April 14, 1960, between 9:30 and 10 A.M., he went to see Collins at his residence, but Collins was not at home. Soon thereafter they met, and while they were walking the detectives stopped and searched them. After the heroin was found on Collins, they were arrested, taken to police headquarters, and questioned. Hawk testified that Collins informed the police of obtaining the narcotics from defendant but that defendant denied giving Collins the narcotics and denied the accusation in Collins' statement. Hawk explained that he was with Collins on the morning of the arrest for the sole purpose of pointing out to Collins potential customers for the narcotics.
The final witness for the State was Wilbert Collins, who was then serving a three to five-year sentence for possession of the narcotics on April 14, 1960. Collins testified that on the same day defendant visited him at his home about 8:30 A.M. He corroborated the testimony of his sister Shirley. Defendant met Collins on his front porch and defendant gave him the ten packages of heroin. Collins was to meet defendant at the Cotton Club at 1 P.M. Collins later saw defendant at police headquarters. Collins described giving his statement to the police. When this statement was read to defendant, "he [defendant] didn't say nothing." Collins stated that his purpose in meeting Hawk was to ascertain possible customers to whom he could "pass the narcotics."
*446 Cross-examination disclosed that Collins had known defendant since 1955 and had worked for him on a construction project. After about a week defendant removed Collins from this job, because Collins had an argument with a foreman. However, Collins stated that he was never angry with defendant.
Thomas Lee Nobles, the defendant, was the only witness for the defense. He testified that he was a building contractor and had first met Collins in 1955 when Collins worked for him for a few days, leaving after an argument with the job foreman. Defendant further stated that he and Hawk had been arrested in 1952 and that he had been sentenced to federal prison for two years for possession of narcotics.
Defendant testified that he received a telephone call from Hawk on the morning of April 14 at about 7:45 A.M. Hawk was seeking a job, and defendant arranged to meet him at the Cotton Club at 1 P.M. Defendant denied having any connection with the narcotics taken from Collins by the detectives; denied ever having had possession of the "ten decks of narcotics"; denied calling at Collins' home on the date of his arrest; and denied ever having seen Collins' sister before the trial. Although defendant admitted he was present when Collins gave his statement to the police and that it was read aloud so that he could hear its contents, nevertheless, he remained silent during the police interview. Nobles admitted that he heard Collins identify him as the one who gave Colline the ten decks of heroin. Nobles conceded that he made no reply when the identification was made.
On this appeal, defendant argues that the narcotics found in Collins' possession should be suppressed as the product of an illegal search and seizure, that Collins' statement was improperly received in evidence, and that the jury should have received cautionary instructions concerning the credibility of Collins and Hawk. Since defendant's trial counsel failed to make timely objection, the last two points are said to satisfy the plain error rule. R.R. 1:5-1, made applicable to this court by R.R. 2-5.
*447 The initial question is whether defendant has standing to attack the search of Collins and the seizure of the heroin. As Justice Frankfurter commented, in speaking for the court in Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960):
"In order to qualify as a `person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." (Emphasis added)
Cf. State v. Doyle, 77 N.J. Super. 328, 344-5 (App. Div. 1962), remanded 40 N.J. 320 (1963); State v. Robinson, 74 N.J. Super. 305, 312 (Cty. Ct. 1962). Even assuming that defendant could use the conviction for possessing and dispensing the heroin as a basis for retroactively claiming standing to challenge the search and seizure, it has been held that one not in possession of the property searched or seized has no standing to raise objections as to the constitutionality of that search or seizure. United States v. Walker, 190 F.2d 481, 483 (2 Cir. 1951), cert. denied 342 U.S. 868, 72 S.Ct. 109, 96 L.Ed. 653 (1951); United States v. Walker, 197 F.2d 287, 289 (2 Cir. 1952), cert. denied 344 U.S. 877, 73 S.Ct. 172, 97 L.Ed. 679 (1952). See Annotation, 4 L.Ed.2d 1999, 2004-2005 (1960). Defendant was not in possession of the seized narcotics, since they were in Collins' possession at the time of the search. Therefore, he has no standing to attack their subsequent admission.
Defendant relies upon United States v. Jones, supra, and Jeffers v. United States, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951), in asserting that he has standing to challenge the admissibility of the heroin seized from Collins. But both cases are distinguishable, for in each instance the persons asserting the right were held to be lawfully in possession of the searched dwellings.
There is no merit to defendant's claim that Collins' statement was inadmissible. Although the State merely requested *448 that the document be marked for identification, defendant's trial counsel (not his present appeal counsel) expressly stipulated that the statement should be "marked into evidence," and added, "I have no objection" to its admission. This alone invalidates defendant's present objection.
We also observe that there was considerable testimony concerning the drafting of the statement, its contents and the nature of Collins' accusations. Introduction of the statement into evidence was therefore merely cumulative and corroborated the testimony of the State's witnesses. We find that defendant did not, as he alleges, suffer manifest wrong or injury. R.R. 1:5-1(a). See State v. Davis, 61 N.J. Super. 536, 547-8 (App. Div. 1960).
Defendant argues that the trial judge should have instructed the jury to regard the testimony of defendant's alleged accomplices with suspicion. But defendant neither requested this charge, nor did he make timely objection. R.R. 3:7-7(b). State v. Le Fante, 14 N.J. 584, 594-5 (1954). The rationale for the cautionary charge is, of course, that an accomplice may be tempted to "hope, or even bargain, for favor in later prosecution treatment of the witness' own criminal conduct in return for aid in convicting the defendant." State v. Begyn, 34 N.J. 35, 54 (1961). In the present case, since Collins had already been sentenced to prison for three to five years for his possession of the heroin, he had no special interest in the outcome of Nobles' trial. Collins merely related the circumstances under which he procured the heroin from defendant, the arrangements made with defendant for its disposition and the statement he gave the police in defendant's presence. Again, we fail to find "plain error" within the scope of R.R. 1:5-1(a).
We are satisfied from a careful review of the transcript of the testimony and the briefs that the various arguments by defendant are without merit.
During the pendency of this appeal, Collins signed an affidavit completely repudiating his sworn testimony against Nobles. Collins now claims that he was coerced into making *449 and signing the statement which accused defendant of possessing and dispensing narcotics. Based on Collins' affidavit, defendant moves for a new trial on the ground of newly discovered evidence.
A motion for a new trial based on the grounds of newly discovered evidence may be made at any time, but if an appeal is pending the trial court may grant the motion only on remand of the case. R.R. 3:7-11(a). Cf. State v. Petrolia, 37 N.J. Super. 326, 330 (App. Div. 1955), reversed on other grounds, 21 N.J. 453 (1956).
The judgment under review is affirmed. Any application for a new trial should be made to the trial court.