89 N.J. Super. 139 (1965)
214 A.2d 411
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LOUIS E. WADE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 5, 1965.
Decided October 1, 1965.
*141 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. Oscar F. Laurie (assigned counsel) argued the cause for appellant.
Mr. Richard A. Koerner, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
*142 The opinion of the court was delivered by CONFORD, S.J.A.D.
On June 7, 1963 a jury in the Union County Court found defendant guilty of breaking and entering "Whitey's Tavern" in Scotch Plains, New Jersey on January 25, 1963, with intent to steal, in violation of N.J.S. 2A:94-1. Defendant's motion for a new trial was denied. He appeals from the ensuing sentence.
Defendant did not take the stand to testify in his own defense. Both the assistant prosecutor in his summation and the trial judge in his charge, following the accepted practice in existence at the time of trial, State v. Corby, 28 N.J. 106, 117 (1958); N.J.S. 2A:84A-17(4), commented upon defendant's failure to testify and the adverse inference that the jury might draw therefrom. By virtue of subsequent decisions of the United States Supreme Court, however, such comments violate the defendant's rights under the Fifth Amendment of the federal constitution made applicable to state actions by reason of the Fourteenth Amendment. State v. Lanzo, 44 N.J. 560 (1965).
Accordingly, the judgment of conviction of this defendant is reversed and the case is remanded to the Union County Court for a new trial.
Since the case must be retried, we deem it expedient to discuss certain of the other grounds for reversal asserted by defendant, in order that the trial court may have the benefit of our views.
* * * [Paragraph deleted for purposes of publication.]
Defendant claims that he was handcuffed during the trial and that this circumstance denied him a fair trial. The State asserts that there is no proof that defendant was, in fact, handcuffed. The record does not disclose that defendant or his attorney objected to any such treatment of him. The State does not contend that there was any just reason for manacling defendant during the trial. We find no need to resolve this factual dispute in view of our reversal and remand for the reasons noted above, but we assume that defendant will not be handcuffed during the retrial of this case without *143 justifiable cause therefor. See State v. Roberts, 86 N.J. Super. 159 (App. Div. 1965), for a treatment of the subject.
Defendant alleges that his requests for counsel during his preliminary incarceration were refused, thereby denying him his constitutional rights. Defendant was arrested on January 25, 1963. He was duly brought before a magistrate who committed him that same day to the Union County jail. Counsel was first assigned on February 20, 1963, but was unacceptable to defendant. A second attorney, who tried the case, was assigned on March 29, 1963, defendant accepting him without objection. The indictment was returned on April 26, 1963 and defendant pleaded not guilty on May 5, 1963, more than a month after the final assignment of counsel. Trial did not commence until June 5, 1963, more than two months after such assignment.
Defendant made no showing at trial of prejudice resulting from the delay in assignment of counsel, even were we to assume as true that he made requests for counsel which were refused. (A present appellate claim of prejudice, in relation to the search and seizure question, is discussed infra.) A showing of prejudice is necessary to justify relief on this ground. State v. Dennis, 43 N.J. 418, 427 (1964). Here, the defendant did not confess, after his requests for counsel were assertedly denied, as in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). In fact, defendant never made any inculpatory statement, but, on the contrary, protested his innocence and relied upon an alibi. Unlike Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), defendant lost no defenses by virtue of the proceedings before the magistrate; unlike White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), no plea of guilty was received in evidence; and unlike Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), no testimony was taken before the magistrate which was later presented at the trial.
As noted in State v. Dennis, supra (43 N.J., at p. 427):
*144 "Upon the return of the indictment, the earlier proceedings before the magistrate were superseded and * * * [defendant] was thereafter entitled to an arraignment on the indictment and to a fair trial with all the protective devices afforded by the Constitution, the statutes and the judicial decisions. He had these in full measure and he suffered no prejudice by any lack of counsel before the magistrate."
The failure to assign counsel before arraignment did not invalidate the conviction.
Defendant's next assertion of error is that he was denied a preliminary hearing and was thereby deprived of his constitutional rights.
Assuming as true the allegation by defendant that the magistrate conducted no preliminary examination of witnesses before committing defendant to the county jail to await the action of the grand jury, defendant does not establish thereby a violation of any constitutional rights which would require a reversal of his conviction after indictment and trial by jury in the County Court. State v. War, 38 N.J. Super. 201 (Cty. Ct. 1955); State v. Spindel, 24 N.J. 395 (1957); State v. Smith, 32 N.J. 501, 536 (1960); State v. Kirkland, 82 N.J. Super. 409 (App. Div. 1964); State v. Jackson, 43 N.J. 148 (1964); State v. Dennis, supra.
The defendant complains that the trial court admitted in evidence as exhibits for the State, over his objection, certain tools found at the scene of the crime by the investigating police. These consisted of a lug wrench, a flashlight, a red-handled screwdriver, two brown-handled screwdrivers and a gray-handled screwdriver. Defendant maintains that these objects were not identified by anyone as having been used in the commission of the crime and that there was no proof connecting him with their use.
The tools were properly admissible in evidence. They were found at the scene of this breaking and entering. The owner of the tavern testified that they did not belong to him. Robert D. Auer, 16 years old, and Sylvester S. Guimaraes, aged 17, also arrested by the police in connection with this crime, testified *145 for the State and admitted their participation therein. Both of these witnesses testified that defendant accompanied them to the scene in an automobile driven by Guimaraes. Guimaraes waited out in the car while Auer and defendant went to make the unlawful entry, after taking tools from the car to effect that purpose. Auer testified that he climbed up on a box, put a glove given to him by defendant over the end of a lug wrench, punched the lug wrench through a pane of glass, and then climbed through, dropping the lug wrench in the process. He further testified that he then opened the side door and let defendant in. The screwdrivers were allegedly used to pry open the coin boxes on various amusement devices in the tavern.
Even though these tools were not specifically identified by the alleged accomplices as those actually used in the commission of the crime, nevertheless the proofs permitted an inference that defendant brought or participated in bringing them to the premises for the criminal purpose. They were properly admissible because of their relevant probative quality in confirming that there was a breaking and entry in the manner and by the means described by Auer, one of the actual participants. They tended to establish the corpus delicti and to buttress the testimony of the juvenile participants. For an analogous situation see State v. O'Leary, 31 N.J. Super. 411, 417-418 (App. Div. 1954). The failure to connect defendant specifically with these tools by direct rather than circumstantial evidence goes to the weight of the evidence, not its admissibility. 1 Wigmore, Evidence (3d ed. 1940) §§ 28-29. See, too, McCormick, Evidence, § 179, p. 384 (1954). Accordingly, we find no substantial merit in this contention of defendant.
Lastly, we deal with the appellate contention that the trial court improperly admitted in evidence a wallet and eyeglasses concededly belonging to defendant which the police of Plainfield and Scotch Plains testified were found in searches of the car after the apprehension of Auer and Guimaraes. The defendant objected to the admission of these articles at trial on *146 the ground that their discovery resulted from an illegal search and seizure, no search warrant having issued.
The State does not argue on this appeal that defendant should be barred from now raising the search and seizure point because he was remiss in not making a pretrial motion to suppress evidence, as required by R.R. 3:2A-6(a). But we think it appropriate that we notice the point in view of the fact that this was one of the two grounds on which the trial court overruled the objection by the defendant to the offer by the State of the wallet and eyeglasses in evidence, the other being his lack of standing to complain of the search and seizure. In opposing the objection, the State had relied only on the second ground, not the first. But in ruling, the trial court called attention to the absence of a pretrial motion and to its discretionary power under the practice rule nevertheless to excuse the failure to file a pretrial motion "if the court finds the defendant could not reasonably have made the motion prior to trial." It then declared, nothwithstanding the subject had not been mentioned in the prior colloquy on the argument of the objection, that "there is no indication before this court that the defendant could not have made this motion reasonably before trial."
On the present appeal, defendant argues that he never knew prior to the actual trial that the police were taking the position that they had obtained the wallet and eyeglasses by a search of the car, rather than by receiving them from Auer and Guimaraes. It had been defendant's position, as related by him to the police (so indicated by police testimony), that during the earlier part of the evening of the day preceding the early morning of the robbery he had been in the company of these boys and that he had left his jacket with the mentioned items therein in the car while he went to a refreshment stand to bring some food out to the boys, the latter remaining in the car while he did so. The boys had in that interval stolen the articles from the jacket unbeknownst to him. He gave the police an alibi that after that occurrence he left the boys, never saw them again, and spent the remainder of the evening *147 and the entire next morning until shortly before his apprehension with another person. No such person was produced at the trial. The boys, on the other hand, testified defendant deliberately left the articles in the car with Guimaraes just before the robbery to avoid the possibility of losing them during that enterprise.
As indicated, however, the reasonableness of defendant's failure to make a pretrial motion to suppress notwithstanding that experienced trial counsel had been assigned to him more than two months prior to the trial, was never made an issue for contest and determination before the court passed upon the question adversely to defendant. (One can appreciate the dilemma in which able assigned trial counsel was placed in relation to a decision as to whether to make a pretrial motion alleging illegal search and seizure by the police in the light of defendant's explanation to him as to how he lost the articles.)
It is our conclusion, however, that the procedure attending and the merits of the trial court's disposition of the question of defendant's reasonableness in not making the pretrial motion need not be passed upon by this court in view of the fact that the entire case must be tried anew in any event. The purpose of the rule requiring a pretrial motion to suppress is to avoid involvement of collateral issues during the course of a criminal trial. Jones v. United States, 362 U.S. 257, 264, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). That policy will not be offended if defendant is permitted to make a motion to suppress in advance of the impending retrial. In all the circumstances presented, we think this is the course consistent with substantial justice in this matter, as well as with the prophylactic objective of the exclusionary rule enunciated by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); and see Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, 602, 612, 613 (1965).
A discussion of the merits of the search and seizure point and of the contention of the State that defendant lacks standing to advance it requires a reference to the relevant testimony at the trial.
*148 Although the testimony is far from clear (not having been adduced in relation to a search and seizure issue), it does appear that there actually were two separate and distinct searches, the first one apparently by the Plainfield police officers, Robertson and Veghte, who apprehended the juveniles, Auer and Guimaraes, in the car. After bringing them to Plainfield Police headquarters and impounding the car, the police, according to Robertson, "searched their car and located a brown wallet." (emphasis ours) In the ensuing search of the "personal papers" in the wallet they ascertained from a social security card therein that the wallet belonged to Louis Wade, the defendant. Veghte testified that after bringing the boys to headquarters, the police "went back, searched the car they [Auer and Guimaraes] were riding in, found a brown leather wallet" (emphasis ours). This testimony does not support an inference that the wallet was seen before the police entered the car. On cross-examination, Veghte said their search did not disclose any eyeglasses. When the trial judge inquired, "Do you recall searching the rear of the car," the response was: "The back seat of the car." The search was in the early morning of January 25, 1963. There is no evidence as to whether it was then dark or light.
Robertson testified that after finding the wallet he and Veghte brought the suspects (and, we gather, the car) to Scotch Plains Police headquarters and turned the wallet over to the desk lieutenant there and custody of the boys (and, we assume, the car) over to the police of that municipality.
At about the same time, apparently, that the Plainfield police were bringing Auer and Guimaraes to their own headquarters for further investigation, or shortly thereafter, Officer Blake of the Scotch Plains police picked up Wade, who was walking on a highway near his home, and brought him to police headquarters there. Blake testified that Scotch Plains Lieutenant Jones told him "to go out and search a vehicle which he said was involved in this crime, and I did that. * * * On checking the rear of the car, on the rear deck, which would be above the rear seat, I found a pair of *149 glasses there in a case * * *." He turned them over to a superior officer.
We address our attention first to the State's argument that defendant had no standing to object on Fourth Amendment grounds to the admission against him of the wallet and eyeglasses, obtained by the police through the searches of the car, since he had no proprietary interest in the car and was not present when the car was searched, and hence was not subjected to an "invasion of his privacy" by the search. A careful review of the authorities satisfies us that the argument is not well founded as against the fact, conceded by all, that defendant at all times was and is the owner of the two objects mentioned. No New Jersey Supreme Court decision has been cited to us as illuminative on the point. However, we conclude from an analysis of the federal Supreme Court cases of United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951), and Jones v. United States, supra, that that court would hold, and so should we, that an admitted owner of personal property found and seized by the police in the course of an illegal search of the premises or property of another has standing as a defendant to object to the use of such property as evidence against him notwithstanding he was not present and had no possessory interest in the premises searched at the time of the search.
The issue here is sharply pointed up by the reliance by the trial court and the State on the following language in Jones v. United States, supra (362 U.S., at p. 261, 80 S.Ct., at p. 731):
"In order to qualify as a `person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else."
They interpret the foregoing language to mean that one who has been affected only by the seizure of his personal property, and who was not present nor had any interest in the premises searched, where the property was found, cannot be *150 said to have been aggrieved by the seizure, although made without a warrant, whether or not the search was valid as to the owner or possessor of the premises searched (here, by analogy, the car).
The decision of the Court of Appeals for the District of Columbia in Jeffers v. United States, 88 U.S. App. D.C. 58, 187 F.2d 498 (D.C. Cir. 1950), is flatly contrary to the thesis asserted, and it was affirmed by the Supreme Court, on basically the same rationale as employed by the Court of Appeals, in an opinion by Mr. Justice Clark, joined by Mr. Justice Frankfurter, later the writer of the court's opinion in Jones v. United States, supra. United States v. Jeffers, supra.
In Jeffers, federal agents without a warrant invaded a hotel room occupied by the Misses Jeffries, aunts of the defendant. The latter had a key to their room and access to it, by their permission, but did not have permission from them to occupy it or keep narcotics there. The search was made in the absence of the Misses Jeffries and of the defendant, and, without their knowledge, motivated by a "tip" that narcotics were hidden there. Bottles of cocaine were found by the officers in the search of the room, and defendant was charged and tried for the federal offense of purchase, sale, etc. of cocaine not in the original stamped package. In a pretrial motion to suppress the narcotics as evidence against him because seized illegally, which was denied, defendant claimed ownership thereof. The Court of Appeals reversed. It said (187 F.2d, at p. 500):
"The Government, assuming arguendo the illegality of the search, disputes the standing of the accused to object to the evidence obtained. It is said no right of privacy of appellant protected by the Fourth Amendment was violated since the apartment searched was not his. But the property seized was his. And not only was the search unlawful; so also was the seizure. There was no warrant for either, and neither was under circumstances making it reasonable without a warrant. There was no emergency and no arrest.
An accused does not have standing to prevent the admission of evidence obtained by an unlawful search and seizure which did not infringe his own personal rights protected by the Amendment. The *151 constitutional provision against unreasonable searches and seizures does not in terms bar the admission of evidence obtained by its violation. The exclusionary rule as applied in the federal courts was formulated by the judiciary in aid of the effectiveness of the Amendment, Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; see Wolf v. [People of State of] Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782; but is available only to the victim of the unconstitutional conduct. `* * * the federal courts in numerous cases, and with unanimity, have denied standing to one not the victim of an unconstitutional search and seizure to object to the introduction in evidence of that which was seized. * * *' Goldstein v. United States, 1942, 316 U.S. 114, 121, 62 S.Ct. 1000, 1004, 86 L.Ed. 1312; see, also, Gibson v. United States, 1945, 80 U.S. App. D.C. 81, 149 F.2d 381, certiorari denied sub nom. O'Kelley v. United States, 1945, 326 U.S. 724, 66 S.Ct. 29, 90 L.Ed. 429. Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., now states that it is the `person aggrieved' by an unlawful search and seizure who may move to suppress evidence so obtained. We assume the Rule does not enlarge the previously established limits of the class who may object. Lagow v. United States, 2 Cir., 1946, 159 F.2d 245. See, also, United States v. Janitz, 3 Cir., 1947, 161 F.2d 19, 21. Clearly, however, it does not contract those limits.
Where the premises are those of the accused he has the requisite standing. Harris v. United States, supra [331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399]; McDonald v. United States, supra [335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153]; Johnson v. United States, supra [333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436]. Here, however, the premises were not appellant's. While he had certain rights therein we believe the question of his standing to object to the evidence turns upon his claim of ownership of the evidence seized rather than upon an interest in the premises searched." (Emphasis ours)
The court then went on to cite a long series of federal cases recognizing that standing to object to the evidential use of, or to move to suppress, illegally seized property depended upon an assertion of a right either in the premises searched or in the property seized. The court then stated (at pp. 501-502):
"We believe the correct rule to be that one who seasonably objects to the use in evidence against him of property he owns which has been seized as the fruit of an unlawful search or otherwise in violation of the Fourth Amendment is entitled to its exclusion though the premises searched were not his. He is a `victim' of (Goldstein v. United States, supra), and `aggrieved' by (Rule 41(e), supra) the violation of the Fourth Amendment. To deny him standing to object would be inconsistent with the purpose of the exclusionary rule to make the Amendment effective; for it condemns unreasonable seizures *152 as well as unreasonable searches and applies to `effects' as well as to `houses.'" (Emphasis ours)
In affirming, the United States Supreme Court iterated that: "The Fourth Amendment prohibits both unreasonable searches and unreasonable seizures and its protection extends to both `houses' and `effects.'" (342 U.S., at p. 51, 72 S.Ct., at p. 95.) Implicit in the court's rationale was the thesis that the unreasonableness (i.e., illegality) of the search was determinative of the unreasonableness of the seizure arising out of the same episode, for the opinion restated, immediately after the afore-quoted language, the basic rule for the constitutional reasonableness of a search  that a warrant on probable cause is a requisite unless the search is incident to a lawful arrest or made in so-called exceptional or emergent circumstances (as to the meaning of the latter see our recent discussion in State v. Naturile, 83 N.J. Super. 563, 568-572 (App. Div. 1964)). After pointing significantly to the illegality of the search as to the occupants of the room, the Misses Jeffries, Mr. Justice Clark met the here involved issue as follows:
"The Government argues, however, that the search did not invade respondent's privacy and that he, therefore, lacked the necessary standing to suppress the evidence seized. The significant act, it says, is the seizure of the goods of the respondent without a warrant. We do not believe the events are so easily isolable. Rather they are bound together by one sole purpose  to locate and seize the narcotics of respondent. The search and seizure are, therefore, incapable of being untied. To hold that this search and seizure were lawful as to the respondent would permit a quibbling distinction to overturn a principle which was designed to protect a fundamental right. The respondent unquestionably had standing to object to the seizure made without warrant or arrest * * *." (342 U.S., at p. 52, 72 S.Ct., at p. 95; emphasis ours)
What is here most significant about the foregoing is that although the Court accepted the Government's argument that defendant's privacy in relation to the search of the premises had not been unlawfully violated, it in effect nevertheless ruled that his security in relation to his chattels had been  *153 and that since this was equally a violation of Fourth Amendment rights he was aggrieved and had standing to complain. And insofar as the Court stresses the agents' purpose to find and seize the defendant's narcotics, that consideration is paralleled herein by the clearly inferable intent of the police to find anything in the car which would implicate defendant so as to corroborate the story of the boys that defendant was with them in the criminal activity.
In the much-discussed Jones case the facts were essentially different from those here presented, and the setting in which the problem as to standing arose was equally disparate. Moreover, the case is one in which the concept of standing was, and was intended to be, broadened by the court rather than constricted. The charge prosecuted in Jones was under the same narcotics statutes as were involved in Jeffers. Defendant was arrested in the course of execution by federal officers of a search warrant authorizing seizure of narcotics in an apartment belonging to another but in which defendant was temporarily staying with permission of the occupant. Defendant moved before trial to suppress the evidence because of inadequate foundation for the warrant. The government challenged his standing "because petitioner alleged neither ownership of the seized articles nor an interest in the apartment greater than that of an `invitee or guest.'" (362 U.S., at p. 259, 80 S.Ct., at p. 730.) The trial court agreed, and denied the motion, with which ruling the Court of Appeals was in accord. The Supreme Court disagreed on the issue of standing. Mr. Justice Frankfurter placed its conclusion in this respect on two independent "separate lines of thought" (362 U.S., at p. 263, 80 S.Ct., at p. 732). These were summarized:
"(1) The same element in this prosecution which has caused a dilemma, i.e., that possession both convicts and confers standing, eliminates any necessity for a preliminary showing of an interest in the premises searched or the property seized, which ordinarily is required when standing is challenged. (2) Even were this not a prosecution turning on illicit possession, the legally requisite interest in the premises was here satisfied, for it need not be as extensive a property interest as was required by the courts below." Ibid.
*154 It is significant that in phrasing the requirement "ordinarily" necessary for standing, the court specified it as a preliminary showing by the defendant "of an interest in the premises searched or the property seized" (emphasis ours), thus according fully with the standard applied in favor of the defendant's standing in Jeffers and repeated over and over again in most of the federal cases. Thus, the Jones opinion indicated that the "body" of previous federal Court of Appeals' decisions had denied standing when a defendant "challenging a search" had failed in his motion to suppress "to allege either that he owned or possessed the property seized or that he had a possessory interest in the premises searched greater than the interest of an `invitee or guest.'" (362 U.S., at pp. 262-263, 80 S.Ct., at p. 732; emphasis ours.) Thus, although the Supreme Court in Jones did not on the facts before it have to deal with the proposition decided in Jeffers  i.e., that a defendant absent at the time and place of a search has standing to challenge the evidence illegally seized as a result thereof if owned by him  the rationale of Jones is clearly consistent therewith and impliedly confirmatory of that proposition of law.
The introductory passage of the Jones opinion, quoted above, that one claiming to be aggrieved by an illegal search "must have been a victim of a search or seizure, one against whom the search was directed," is thus seen, in the light of the opinion as a whole, in nowise contradictory of the proposition that an absent owner of property illegally seized is a "victim" at least of the seizure, and, in the sense of the Jeffers opinion, of the search and seizure as an integrated transaction. He therefore has standing to challenge the use of the property as evidence against him.[1]
*155 In accord with the foregoing analyses: United States v. McDaniel, 154 F. Supp. 1 (D.C.D.C. 1957); Lord v. Kelley, 223 F. Supp. 684 (D.C. Mass. 1963); Hinchcliff v. Clarke, 230 F. Supp. 91, 103 (D.C.N.D. Ohio E.D. 1963). So, too, are the observations of Professor Maguire, writing after Jeffers but before Jones, in Evidence of Guilt (1959), at pp. 215-216:
"It is probably reasonably accurate to say that in actual application of the exclusionary rule a party is unlikely to gain suppression who has nothing which can be termed a proprietary, possessory or participatory interest in the purloined or bludgeoned evidence, or alternatively in the place where it was found."[2]
The State cites United States v. Walker, 190 F.2d 481 (2 Cir. 1951), cert. denied 342 U.S. 868, 72 S.Ct. 109, 96 L.Ed. 653 (1951), and United States v. Walker, 197 F.2d 287 (2 Cir. 1952), cert. denied 344 U.S. 877, 73 S.Ct. 172, 97 L.Ed. 679 (1952), as authority that an owner not in actual possession of seized property at the time a search is made is without standing to attack the legality of the search and seizure. Those cases seemingly so hold. They appear to be founded on a line of lower court federal cases which, without any discussion of the principle, assume that only present "possession" of things is protected by the Fourth Amendment. See, e.g., the per curiam opinion in United States v. Reiburn, 127 F.2d 525, 526 (2 Cir. 1942), citing for the proposition Connolly v. Medalie, 58 F.2d 629 (2 Cir. 1932), which is not in point at all and which was criticized in its restrictive rationale of standing by Jones v. United States, supra (362 U.S., at pp. 262-264, 80 S.Ct., at pp. 731-733).
*156 At all events, the Walker line is directly contrary to United States v. Jeffers, supra, wherein, as seen above, ownership without present possession of the goods seized was held by the United States Supreme Court to confer standing to object to the search. Moreover, as already noted, Jones v. United States, supra, by clear implication recognizes ownership of the seized property in and of itself as a sufficient foundation to sustain standing. There is no intimation therein that ownership unaccompanied by concurrent possession of the seized goods at the time of the search is insufficient.
Since State v. Nobles, 79 N.J. Super. 442, 447 (App. Div. 1963), also cited by the State, relies for its determination that absence of concurrent possession deprives the owner of standing on the two Walker cases cited above, it shares their weakness in flying in the face of the contrary holding by the Supreme Court in United States v. Jeffers, supra. And we are reluctantly constrained to disagree with the attempt in Nobles, supra, at p. 447, to distinguish Jeffers on the supposed ground that standing there was based on rightful possession by the defendant of the searched dwelling, since, as we have been at pains above to demonstrate, the Supreme Court in Jeffers in nowise relied upon defendant's right of access to his aunts' hotel room (he certainly was not in "possession" of the room) for his adjudicated standing to object to the search and seizure, but solely on his ownership of the property seized. This is made particularly plain by the Court of Appeals opinion in the same case, quoted above.
As to State v. Bibbo, 83 N.J. Super. 36 (App. Div. 1964), also cited by the State, the case is not apposite in relation to the present problem at all, although it correctly states the general principles of standing. Bibbo did not take up for discussion or adjudication the present issue  whether an owner of personal property has standing in that capacity to object to the illegality of its seizure under the Fourth Amendment. It does not appear that in Bibbo the defendant was justifying his standing on the basis that he owned the betting slip which fell to the floor in view of the police  thereby justifying his *157 arrest and fuller incidental search. Certainly the court did not undertake to pass upon any such argument or to consider the Jeffers case in relation thereto. The decision has as much or more to do with the merits of the asserted illegality of the search than with the question of standing.
For the foregoing reasons we conclude that defendant had standing to complain of the alleged illegality of the seizure by the police of the wallet and eyeglasses.
We last reach the merits of the questions as to the validity of the searches and seizures. We state at once the interim conclusion that there must be a remission of these questions for resolution by the trial court after a full hearing of the pertinent facts on the motion to suppress before the next trial. Since no factual presentation geared to the search and seizure questions was ever mounted at the trial, the evidence leaves many pertinent factual questions unanswered. We refer to some of the more obvious ones for the guidance of the parties and the trial court.
The fact that the primary object of search here was a motor vehicle does not exclude the applicability of the Fourth Amendment, Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), although that fact may in some circumstances bear on the question of the reasonableness of not first procuring a warrant  e.g., where because of the mobility of the car evidence of a crime or contraband may be lost before the warrant can be obtained. Id., at pp. 366, 367, 368, 84 S.Ct. 881; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). But here, as in Preston, those circumstances would not seem relevant since the car was, in effect, impounded by the police and there was no danger of loss of evidence therein before a search warrant could be obtained.
We have already, in effect, disposed of the State's argument that this search and seizure may not be complained of by defendant if not objected to or complained of by the immediate possessor of the vehicle, Guimaraes, in our disposition of the question of defendant's standing. As in United States v. Jeffers, *158 supra, the searches of the car are not "isolable" (342 U.S., at p. 52, 72 S.Ct., at p. 95) from the seizures of defendant's property, all constituting integrated transactions.
Nor can one say from the sparse factual record whether these searches and seizures were incidental to a lawful arrest. There is insufficient information in the present record to permit a reliable conclusion as to whether at the time of these searches the occupants of the car had been arrested or were merely being detained for investigation, see State v. Doyle, 42 N.J. 334, 342 (1964); State v. Romeo, 43 N.J. 188, 205-206 (1964); compare State v. Smith, 32 N.J. 501, 534-535 (1960), and State v. Taylor, 81 N.J. Super. 296, 312-314 (App. Div. 1963). Similarly, although the prima facie indications from the record are that the searches may have been too far removed in time and place to be considered incidental to the arrest of the boys, assuming their original apprehension constituted an arrest, see Preston v. United States, supra, yet the State will have an opportunity to adduce the pertinent proofs on the remand. If the formal arrests did not take place until immediately prior to the searches, the answer may be different. Here the precise relative chronology of (1) information to the police of the fact of the crime; (2) of the apprehension of the boys and of defendant; (3) of the connection of the boys and of Wade to the crime by information independent of the admissions of the boys; (4) of such connection by the admissions of the boys; and (5) of the searches, would be material on these questions. Cf. State v. Doyle, supra.
It will be noted that since the very recent decision of the Supreme Court in State v. Bisaccia, 45 N.J. 504 (1965), which had not been handed down when this appeal was argued, it is irrelevant to the validity of this search and seizure that the eyeglasses and wallet were offered in evidence by the State as "mere evidence" of defendant's implication in the crime rather than as fruits or instrumentalities of the crime or contraband. The holding of that case is (other requisites of a valid search being satisfied) that validity is *159 not adversely affected by the circumstance that the only justification for the search and seizure of a particular tangible chattel and its introduction in evidence is that it tends to implicate the defendant as guilty of a crime. See the questions which had previously been raised as to this problem in our decision in State v. Naturile, supra (83 N.J. Super. 563, 575-577); also State v. Macri, 39 N.J. 250, at p. 260, n. 3 (1963).
If the searches of the car, as such, are sustained as valid on the basis of the facts which will be adduced on the remand, applying the pertinent legal principles, the seizure of the eyeglasses and wallet in the course thereof for their potential value in casting light on the identity of any confederate of the boys in the commission of the crime would seem clearly justifiable and unexceptionable. * * * [Balance of paragraph deleted for purposes of publication.]
Reversed and remanded for a new trial.
NOTES
[1] Note also the observation in Jones, in the same context as the quoted language (362 U.S., at p. 261, 80 S.Ct., at p. 731): "The restrictions upon searches and seizures were obviously designed for protection against official invasion of privacy and the security of property." (Emphasis ours)
[2] California goes so far as to permit the raising of an objection to illegally seized evidence by one who has interest in neither the property seized nor the place searched  this on the theory that so doing subserves the policy of the exclusionary rule of discouraging future official lawlessness, in respect of which the circumstance of past invasion of the particular defendant's property or privacy rights is irrelevant. People v. Martin, 45 Cal.2d 755, 290 P.2d 855, 857 (Sup. Ct. 1955); and see Traynor, "Mapp v. Ohio At Large in the Fifty States," 1962 Duke L.J. 319, 335-336 (1962).