706 A.2d 802

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JAMES
COLAPINTO, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 10, 199—Decided March 11, 1998

Before Judges LONG and KLEINER.

*Thomas Cannavo*, Assistant Ocean County Prosecutor, argued the cause for appellant (*E. David Millard*, Ocean County Prosecutor, attorney; *Mr. Cannavo*, of counsel and on the brief).

*Randy Rosenblum*, argued the cause for respondent (*Wilentz, Goldman & Spitzer*, attorneys; *Mr. Rosenblum* and *James Trabilsy*, on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

Pursuant to leave to appeal granted, the State appeals from a Law Division decision granting defendant James Colapinto's motion to suppress evidence raised immediately prior to a trial *de novo* following defendant's conviction in the Dover Township Municipal Court for driving while intoxicated, *N.J.S.A.* 39:4–50, and speeding, *N.J.S.A.* 39:4–98. We conclude that defendant waived his right to seek suppression of evidence pursuant to *Rule* 7:4–2(f), and reverse the decision suppressing the State's evidence and remand to the Law Division for a trial *de novo*.

I

On January 19, 1996, at approximately 10:00 p.m., defendant was traveling on Route 9 in Dover Township when he was stopped

by Officer Richard Ross of the Dover Township Police Department. Officer Ross was operating a K–55 radar unit, which clocked defendant as traveling sixty-six miles per hour in a fifty mile per hour speed zone. The testimony in the municipal court was uncontradicted that defendant had a strong odor of alcohol emanating from his person and from the interior of his vehicle. Ross testified that he was at that time involved in a narcotics detail with Lakewood and Dover Township and therefore he requested by radio that. another officer be dispatched to investigate his suspicion that defendant was operating his vehicle while intoxicated. In response to his communication to headquarters, Ross was advised that Officer Raymond Maloney, who was just finishing other police duties, would be dispatched to conduct further tests on defendant. Defendant was asked by Ross to remain seated in defendant's vehicle. He was not handcuffed or questioned. While awaiting Maloney's arrival, Ross remained seated in his police vehicle. According to Ross, Officer Maloney arrived at the scene within forty to forty-five minutes after the commencement of the traffic stop.

It is clear from the record that Maloney requested defendant to perform psychophysical tests [1] and then concluded that the test results provided him with sufficient evidence to conclude that defendant had violated *N.J.S.A.* 39:4–50. Defendant was placed under arrest and was transported to police headquarters where he

---

[1] Defendant was asked to perform five separate tests. Although defendant was able to recite the alphabet, defendant failed to successfully complete the other four tests. Maloney described defendant as follows:

> In the process of the balance test his [defendant's] ability to walk, he staggered, his knees were sagging. While he was standing he was swaying, his knees sagged and he was continually leaning for balance by separating his feet and so forth. Originally when I was speaking with him, his speech was a little slow, it was a little slurred.

Maloney described defendant's demeanor:

> He was cooperative. His hands were very slow. His eyes were bloodshot and watery and he had an odor of alcoholic beverage on his breath.... [His] face was flushed ... [His] hands were just a little fumbling, a little slow.

was requested to submit to breathalyzer tests. Two breathalyzer tests were ultimately performed: (1) the first at 11:32 p.m. reflected a .19 reading; and (2) the second test at 11:40 p.m. also reflected a .19 reading. Defendant failed both tests and was charged with violating *N.J.S.A.* 39:4–50. When asked if he had consumed any alcohol that day, defendant admitted consuming two drinks, the first at 4:00 p.m. and the second at 6:00 p.m. Maloney prepared a written report as to the psychophysical tests performed at the scene and the administration and results of the breathalyzer tests. This report was provided to defendant's counsel in pre-trial discovery.

The issue in this appeal focuses upon the absence of any report prepared by Officer Ross. As noted, Ross stopped defendant for speeding in violation of *N.J.S.A.* 39:4–98. At the scene, Ross prepared a traffic summons, and although he was present when Maloney administered the psychophysical tests, he did not accompany Maloney and defendant to police headquarters. Ross did not prepare a police report. Thus, the forty to forty-five minute delay in Maloney's arrival was unknown to defendant's counsel until Ross testified as the State's first witness in the municipal court trial on October 10, 1996.

Officer Maloney was the State's second witness. After Maloney's direct testimony, the municipal court judge recessed the proceedings during defense counsel's cross-examination. The proceedings continued on November 6, 1996.

At the November 6 hearing, Maloney's cross-examination was completed, whereupon the State rested without presenting any re-direct evidence. Defendant did not testify and defendant's counsel rested.

The following appears in defendant's summation.

> Assuming the stop was good, there's another interesting issue which I did not brief at this time, and I'll have to brief it, if need be, is this unreasonable detention. Because I know there's a line of cases, and quite frankly I did not pull them out, and it's a highly legal issue. But there's a line of cases out there how long you can

detain somebody before you decide whether they're under arrest, whether you conduct a *Terry* stop or what's going on out there.[2]

It is clear that the municipal court judge concluded that defendant had waived any right to suppress the evidence by failing to assert his claim of impermissible detention until his summation. Defendant was convicted of violating both *N.J.S.A.* 39:4-50 and *N.J.S.A.* 39:4-98. Defendant's speeding conviction was merged with his conviction for violating *N.J.S.A.* 39:4-50. Defendant's driver's license was suspended for six months and he was required to pay a $200 fine, court costs and mandatory statutory penalties.

Defendant sought a trial *de novo* in the Law Division. Prior to that trial, defendant filed a formal motion to suppress the results of the psychophysical tests and the results of the two breathalyzer tests predicated upon his contention that the delay in Maloney's arrival rendered defendant's detention constitutionally impermissible.

A motion to suppress must be made prior to trial. *See R.* 7:4-2(f). Defendant contends he was unable to move to suppress before trial as he was unaware of the delay in Maloney's arrival until that fact was revealed for the first time by Officer Ross after the municipal court trial commenced. Although defendant's argument is persuasive, it is absolutely clear that defendant learned of the alleged impermissible detention on October 10, 1996. Yet, defendant did not then immediately orally move to suppress the evidence. Moreover, when the proceedings resumed on November 6, 1996, defendant proceeded to complete his cross-examination of Maloney and then, and only then, in his summation did defendant raise the suppression issue. Thus, although there is authority to permit a defendant to raise an untimely motion to

---

[2] Although testimony at the initial municipal court proceeding would permit the reader to conclude that Maloney was first summoned by Ross at 10:20 p.m. and first arrived at the scene at approximately 11:00 p.m., the testimony at the November 6 municipal court hearing indicates that Maloney arrived on the scene at 10:45 p.m. and began to perform the psychological tests "a little before" 11:00 p.m.

suppress, *State v. Raymond,* 95 *N.J.Super.* 175, 181, 230 *A.*2d 404 (App.Div.1967), a defendant must act expeditiously and must raise the suppression issue as soon as he becomes aware of same. *See State v. DiRienzo,* 53 *N.J.* 360, 384, 251 *A.*2d 99 (1969) (concluding that defendant's suppression argument was not properly before the court where no motion in accordance with the court rule was made in advance of trial to suppress the evidence taken by the police, *nor was any objection made at trial* ) (emphasis added).

Here, defendant became aware of the suppression issue as soon as Officer Ross testified that it took Officer Maloney approximately forty to forty-five minutes to arrive from police headquarters. Yet, defendant's counsel proceeded to fully cross-examine Officer Ross, allowed the State to fully present the direct testimony of Officer Maloney, proceeded to partially cross-examine Officer Maloney, and completed his cross-examination at another court session one week thereafter. Even then, the claim of impermissible detention was not asserted until midway into defendant's summation. We conclude that the municipal court judge properly denied defendant's argument. We also conclude that the Law Division judge erred when he permitted defendant the opportunity to raise the suppression issue at the trial *de novo.* "[W]e think this is the course consistent with substantial justice in this matter...." *State v. Wade,* 89 *N.J.Super.* 139, 147, 214 *A.*2d 411 (App.Div.1965). In *Wade,* the defendant was permitted to raise a motion to suppress in advance of a retrial even though the motion was not raised prior to the first trial, where it was clear that the defendant in that case did not learn of the suppression issue until the first trial. Here, as we have noted, defendant learned of the suppression issue early in his trial, yet failed to raise same in a timely manner. The order suppressing the evidence is reversed.

■ Additionally, we note that had we addressed the merits of the constitutional issue, we would have concluded that defendant's detention was not impermissible. Officer Ross offered a reasonable explanation for his decision to summon another officer to the scene to perform psychophysical tests upon defendant. Officer

Maloney was finishing other assigned police duties when he was summoned at 10:20 p.m., and arrived on the scene at 10:45 p.m. We hardly think that the twenty-five minute detention in this case was constitutionally impermissible. *See State v. Dickey*, 152 *N.J.* 468, 706 *A.*2d 180 (1998) (citing *United States v. Sharpe*, 470 *U.S.* 675, 686, 105 *S.Ct.* 1568, 1575, 84 *L.Ed.*2d 605, 615 (1985) (refusing to adopt a "hard-and-fast time limit for a permissible *Terry* stop")). Here, Officer Ross did not handcuff, touch or question defendant, and permitted defendant to wait for Officer Maloney's arrival while seated in his own motor vehicle rather than the police vehicle. *See ibid.* (quoting *United States v. Bloomfield*, 40 *F.*3d 910, 917 (8th Cir.1994) (identifying several factors to aid in the analysis of when an investigative stop becomes a *de facto* arrest), *cert. denied*, 514 *U.S.* 1113, 115 *S.Ct.* 1970, 131 *L.Ed.*2d 859 (1995)). Thus, "the combination of the duration of the detention and the degree of intrusion" upon defendant's Fourth Amendment liberty interests did not exceed permissible bounds. *Ibid.*

The matter is remanded to the Law Division for a trial *de novo* of defendant's municipal court conviction.