## UNITED STATES *v.* JEFFERS.

No. 3.   Argued October 15, 1951.—Decided November 13, 1951.

*Beatrice Rosenberg* argued the cause for the United States. With her on the brief were *Solicitor General Perlman, Assistant Attorney General McInerney* and *John F. Davis.*

*T. Emmett McKenzie* argued the cause for respondent. With him on the brief was *James K. Hughes.*

Mr. Justice Clark delivered the opinion of the Court.

Here we are faced with troublesome questions as to the exclusion from evidence, on motion of the accused, of contraband narcotics claimed by him which were seized on the premises of other persons in the course of a search without a warrant. On the basis of the seized narcotics, the accused, respondent here, was convicted of violation of the narcotics laws, 26 U. S. C. § 2553 (a) and 21 U. S. C. § 174.[1] Prior to trial the District Court had denied respondent's motion to suppress, as evidence at the trial, the property seized. The Court of Appeals reversed the conviction by a divided court, 88 U. S. App. D. C. 58, 187 F. 2d 498. Since a determination of the question is important in the administration of criminal justice, we brought the case here. 340 U. S. 951.

The evidence showed that one Roberts came to the Dunbar Hotel in the District of Columbia on Monday,

---

[1] "It shall be unlawful for any person to purchase, sell, dispense, or distribute any of the drugs mentioned in section 2550 (a) except in the original stamped package or from the original stamped package; and the absence of appropriate tax-paid stamps from any of the aforesaid drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession same may be found; . . . ." 26 U. S. C. § 2553 (a).

"If any person fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or assists in so doing or receives, conceals, buys, sells or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, such person shall, upon conviction, be fined not more than $5,000 and imprisoned for not more than ten years. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." 21 U. S. C. § 174.

September 12, 1949, at about 3 p. m., sought out the house detective, Scott, and offered him $500 to let him into a room in the hotel occupied by respondent's two aunts, the Misses Jeffries. Roberts told Scott that respondent had "some stuff stashed" in the room. The house detective told Roberts to call back later in the evening and he would see about it. He then immediately reported the incident to Lieut. Karper, in charge of the narcotics squad of the Metropolitan Police, who came to the hotel about 4 p. m. Karper went with Scott to the room occupied by the Misses Jeffries. When there was no answer to their knock on the door the two officers then went to the assistant manager and obtained a key to the room. Although neither officer had either a search or an arrest warrant they unlocked the door, entered the room and, in the absence of the Misses Jeffries as well as the respondent, proceeded to conduct a detailed search thereof. On the top shelf of a closet they discovered a pasteboard box containing 19 bottles of cocaine, of which only two had U. S. tax stamps attached, and one bottle of codeine, also without stamps. The bottles were seized and taken to Scott's office, where Lieut. Karper telephoned the federal narcotics agent and upon the latter's arrival turned the seized articles over to him. Respondent was arrested the following day on the charges before us, at which time he claimed ownership of the narcotics seized.

It appeared from the evidence at the pretrial hearing that the Misses Jeffries had given respondent a key to their room, that he had their permission to use the room at will, and that he often entered the room for various purposes. They had not given him permission to store narcotics there and had no knowledge that any were so stored. The hotel records reflected that the room was assigned to and paid for by them alone.

We agree with the Court of Appeals that the seizure was made in violation of the Fourth Amendment and on

motion of respondent its fruits should have been excluded as evidence on his trial.

The Fourth Amendment [2] prohibits both unreasonable searches and unreasonable seizures, and its protection extends to both "houses" and "effects." Over and again this Court has emphasized that the mandate of the Amendment requires adherence to judicial processes. See *Weeks* v. *United States,* 232 U. S. 383 (1914); *Agnello* v. *United States,* 269 U. S. 20 (1925). Only where incident to a valid arrest, *United States* v. *Rabinowitz,* 339 U. S. 56 (1950), or in "exceptional circumstances," *Johnson* v. *United States,* 333 U. S. 10 (1948), may an exemption lie, and then the burden is on those seeking the exemption to show the need for it, *McDonald* v. *United States,* 335 U. S. 451, 456 (1948). In so doing the Amendment does not place an unduly oppressive weight on law enforcement officers but merely interposes an orderly procedure under the aegis of judicial impartiality that is necessary to attain the beneficent purposes intended. *Johnson* v. *United States, supra.* Officers instead of obeying this mandate have too often, as shown by the numerous cases in this Court, taken matters into their own hands and invaded the security of the people against unreasonable search and seizure.

The law does not prohibit every entry, without a warrant, into a hotel room. Circumstances might make exceptions and certainly implied or express permission is given to such persons as maids, janitors or repairmen in the performance of their duties. But here the Government admits that the search of the hotel room, as to the

---

[2] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Misses Jeffries, was unlawful. They were not even present when the entry, search and seizure were conducted; nor were exceptional circumstances present to justify the action of the officers. There was no question of violence, no movable vehicle was involved, nor was there an arrest or imminent destruction, removal, or concealment of the property intended to be seized. In fact, the officers admit they could have easily prevented any such destruction or removal by merely guarding the door. Instead, in entering the room and making the search for the sole purpose of seizing respondent's narcotics, the officers not only proceeded without a warrant or other legal authority, but their intrusion was conducted surreptitiously and by means denounced as criminal.

The Government argues, however, that the search did not invade respondent's privacy and that he, therefore, lacked the necessary standing to suppress the evidence seized. The significant act, it says, is the seizure of the goods of the respondent without a warrant. We do not believe the events are so easily isolable. Rather they are bound together by one sole purpose—to locate and seize the narcotics of respondent. The search and seizure are, therefore, incapable of being untied. To hold that this search and seizure were lawful as to the respondent would permit a quibbling distinction to overturn a principle which was designed to protect a fundamental right. The respondent unquestionably had standing to object to the seizure made without warrant or arrest unless the contraband nature of the narcotics seized precluded his assertion, for purposes of the exclusionary rule, of a property interest therein.

It is urgently contended by the Government that no property rights within the meaning of the Fourth Amendment exist in the narcotics seized here, because they are contraband goods in which Congress has declared that

"no property rights shall exist." [3]   The Government made
the same contention in *Trupiano* v. *United States,* 334
U. S. 699 (1948).   See Brief for the United States, pp.
24–45.   This Court disposed of the contention saying:

> "It follows that it was error to refuse petitioners'
> motion to exclude and suppress the property which
> was improperly seized.   But since this property was
> contraband, they have no right to have it returned
> to them."   334 U. S. at 710.

The same section declaring that "no property rights shall
exist" in contraband goods provides for the issuance of
search warrants "for the seizure" of such property.   The
Government's view in *Trupiano* was that the latter provi-
sion applies "when the entry must be made to seize"; but
not "where, after a lawful entry for *another purpose,* the
contraband property is before the eyes of the enforcing
officers." [4]   This construction would make it necessary for
the officers to have a search warrant here.   We are of the
opinion that Congress, in abrogating property rights in

[3] "It shall be unlawful to have or possess any liquor or property
intended for use in violating the provisions of this part, or the in-
ternal-revenue laws, or regulations prescribed under such part, or
laws, or which has been so used, and no property rights shall exist
in any such liquor or property.   A search warrant may issue as pro-
vided in Title XI of the act of June 15, 1917, 40 Stat. 228 (U. S. C.,
Title 18, §§ 611–633) [since superseded by Fed. Rules Crim. Proc.
41], for the seizure of such liquor or property.   Nothing in this sec-
tion shall in any manner limit or affect any criminal or forfeiture
provision of the internal-revenue laws, or of any other law.   The
seizure and forfeiture of any liquor or property under the provisions
of this part, and the disposition of such liquor or property subsequent
to seizure and forfeiture, or the disposition of the proceeds from the
sale of such liquor or property, shall be in accordance with existing
laws or those hereafter in existence relating to seizures, forfeitures,
and disposition of property or proceeds, for violation of the internal-
revenue laws." 26. U. S. C. § 3116.

[4] Brief for the United States, pp. 35–36 (emphasis added).

such goods, merely intended to aid in their forfeiture and thereby prevent the spread of the traffic in drugs rather than to abolish the exclusionary rule formulated by the courts in furtherance of the high purposes of the Fourth Amendment. See *In re Fried,* 161 F. 2d 453 (1947).

Since the evidence illegally seized was contraband the respondent was not entitled to have it returned to him. It being his property, for purposes of the exclusionary rule, he was entitled on motion to have it suppressed as evidence on his trial.

*Affirmed.*

THE CHIEF JUSTICE and MR. JUSTICE REED dissent.

MR. JUSTICE MINTON took no part in the consideration or decision of this case.