302 N.E.2d 838 (1973)
Donald LUDLOW, Appellant (Defendant below),
v.
STATE of Indiana, Appellee (Plaintiff below).
No. 2-573A110.
Court of Appeals of Indiana, Third District.
October 30, 1973.
Rehearing Denied December 11, 1973.
David L. Allison, Allison & Barnhart, Indianapolis, for appellant.
Theodore L. Sendak, Atty. Gen., Robert A. Zaban, Deputy Atty. Gen., Indianapolis, for appellee.
*839 SHARP, Judge.
On January 27, 1972, Appellant was charged by way of affidavit of a violation of the Indiana Dangerous Drug Act, IC 1971, 16-6-8-2, Ind. Ann. Stat. § 35-3332 (Burns 1972 Supp.), as follows:
"* * * that Donald Ludlow late of said County and State, on or about January 26, 1972, at and in the County and State aforesaid, did then and there unlawfully possess and have on his person or under his control a quantity of Dangerous Drugs, to-wit: Methamphetamine that were not dispensed upon a prescription of a physician, dentist, veterinarian or Osteopathic physician licensed by law to prescribe such drug, * * *"
To this charge the Appellant entered a plea of not guilty and in a bench trial was found guilty and sentenced to imprisonment for one (1) to ten (10) years. We will consider the issues properly presented on this appeal from that sentence.

I.
On June 9, 1972 the Appellant filed a written motion to suppress and the trial court held an evidentiary hearing on it and at the conclusion thereof overruled the same. Said motion to suppress all of the evidence seized by police officers on January 26, 1972 resulted from a warrantless search of a house at 3715 North Guion Road in Indianapolis, Indiana.
At the hearing on that motion to suppress a narcotics officer of the Indianapolis Department testified:
"Between 7 and 10 P.M. on the evening of January 26, 1972, Officer Brenton received information from a reliable informant, upon whose information convictions were previously obtained, that there were drugs at a specified place in a house located at 3715 Guion Road in Indianapolis, Marion County, Indiana. Information concerning the identity of certain people who were in the house was also received from the informant. Arrest warrants for two of the people alleged to be in the house were outstanding. One of the individuals was charged with rape. A half-hour after the informant left the house and told Officer Brenton who was there. Officer Brenton went to the house at 3715 Guion Road to make an arrest. He knocked on the front door, identified himself to Donald Ludlow, and was denied entry. He knew at that time that two arrest warrants for people in the house were outstanding. He was denied entry and forced his way in. Then he called `police' a few times and went directly to a mirror in the upstairs southside bedroom where his informant told him to go, and the drugs were there. Donald Ludlow was known to be a resident of the house and was at the scene at the time. The information that the informant gave Officer Brenton turned out to be accurate with respect to the location of the drugs and the people that were in the apartment. Donald Ludlow was one of at least seven people who were arrested at the scene."
The Appellant properly renewed his objection to the admission of the evidence which was the subject of said motion to suppress.
During the trial another officer of the Indianapolis Police Department testified to substantially the same events that had been described in the hearing on the motion to suppress. This second officer testified in part, that "approximately one-half hour earlier we received information from a confidential and reliable informant who was reliable in the past on arrests and convictions that there had been drugs brought in from Gary, Indiana and were taken to the 3715 Guion Road address. The drugs were there at that time upstairs in the south bedroom on a mirror and were being cut at this particular time." An unsuccessful attempt was made by the police to contact a municipal judge and a deputy prosecutor to obtain a search warrant but they *840 could not be located. Said officer also said that there were arrest warrants for two persons at said address for offenses, one warrant was for rearrest on a traffic offense and one was for rape. These two officers proceeded to that address, knocked on the door which was opened by Appellant and one other. When the police officers identified themselves Appellant and the other person shut the door. At that time they were refused entry these police officers heard running inside the house and were afraid the drugs would be destroyed. Both of the persons for whom the police had arrest warrants at that time were present at that address when the police arrived. After being refused entry, the police forced open the door. One officer called "Police" twice before entry. One officer arrested the Appellant while the other proceeded directly to the room on the second floor where the informant had located the drugs. Upon entering that room the officer observed a mirror lying on a mattress on a pile of blankets which had a white powdery substance lying on it. Expert testimony identified the substance as methamphetamine. When placed under arrest and advised of his constitutional rights Appellant said he lived at 3715 North Guion Road and Appellant was the only one present at the time of the incidents here described who gave his address as 3715 North Guion Road.
In regard to the motion to suppress, we must determine if the evidence seized was properly admissible under these facts, when viewed in a light most favorable to the Appellee-State.
It is correct that the officers were properly in the house to execute arrest warrants and were entitled under our statutes to use reasonable force to enter for that purpose. IC 1971, XX-X-XX-X, Ind. Ann. Stat. § 9-1009 (Burns 1972 Supp.)
Half an hour before the officers arrived, they had received information from a reliable informant that at least seven persons were in the house. The officers then determined that two of these persons were wanted on arrest warrants. One warrant was a rearrest warrant for traffic offenses (appellant) and the other warrant was for rape (Robert E. Brown).
At the time of their entry into the house, the police officers "heard running" inside the house. The defendant and another were taken into custody near the front door. The officers knew that at least five other persons, including the person wanted on the warrant for rape, were somewhere else in the house.
68 Am.Jur.2d, Searches and Seizures, § 94 (1973) at page 749, states "And the Chimel decision [Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), limiting the scope of a search incident to a valid arrest to the area within the arrestee's control.] has been construed not to prevent a search incident to an arrest from extending to rooms of a house other than the room where the arrest is made, where the arresting officers have reasonable cause to believe, based on facts available at that time, that additional persons might be on the premises and might be involved in the offense charged or might pose a security risk for the officers. Upon making a search for additional persons, the `plain view' doctrine applies and justifies the seizure of evidence falling into the officers' plain view, although the Chimel doctrine would have prevented any such search for the sole purpose of discovering evidence," citing People v. Block, 6 Cal.3d 239, 103 Cal. Rptr. 281, 499 P.2d 961 (1971), (which held where officers discovered six or seven persons in the downstairs portion of a house with evidence of marijuana smoking on the premises, and lights illuminated the stairway and upstairs hall, the officers were justified in searching the upstairs for other participants in a "pot party".)
Robertson, P.J., speaking for the First District of this court in Presley v. State, *841 Ind. App., 284 N.E.2d 526, at pages 529-530 (1972) said:
"What the `plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification  whether it be a warrant for another object, hot pursuit, search incident to a lawful arrest, or some other legitimate reason for being present unconnected with a search against the accused  and permits the warrantless seizure."
In that case, the defendant was arrested in a hallway and while looking in an adjoining room for his accomplice, police found a camera which was in "plain view" and which was subsequently held properly admissible in a prosecution for burglary.
The fact that here the officers had exact prior information as to the location of the drugs does not vitiate the plain view doctrine and Presley v. State, supra, is determination of this issue.
Therefore, the drugs seized were properly admissible into evidence and the trial court did not err in overruling Appellant's motion to suppress.

II.
At the close of Officer Robertson's testimony on behalf of the State at the trial of this case, the Appellant made an oral motion that the State produce its secret informant at trial for purposes of cross-examination. The trial court held an evidentiary hearing on said motion. At said hearing Officer Robertson testified in substance:
"The informant is still being used. Other cases are still pending which arose from information given by him. If his name is revealed there are other people whose freedom would be jeopardized, and the informant's safety and welfare would also be jeopardized. Furthermore, bringing the informer into court to testify would jeopardize convictions in many pending cases. Moreover, at least one of the people against whom cases are now pending has killed a police informant."
The trial court denied said motion to produce.
In Gordon v. United States, 438 F.2d 858 (5th Cir.1971), the Fifth Circuit Court of Appeals defined an informer as "an undisclosed person who confidentially volunteers material information of violations of the law to officers charged with enforcement of that law."
Recently our Supreme Court held where information of an informant merely led to surveillance, the identity of the informant was not necessary even where the jury was told of the existence of such informer. In McCulley v. State, Ind., 272 N.E.2d 613 (1971), Justice Prentice, speaking for a unanimous Supreme Court, said:
"Citing Glover v. State (1969) Ind., 251 N.E.2d 814, Defendant contends that he had a right to learn the identity of the informer and to cross-examine for that purpose, because the prosecution had `opened the door' of that subject in direct examination and could not then close it. The Glover case (supra) does stand as authority for the rule that if the identity of the informer is to be protected, then it is up to the prosecuting attorney not to bring into the case evidence relating to him. However, we must look to the purpose of the rule before applying it; and if the problem at hand is not within the scope of such purpose, its application is not required. It is the policy generally to prevent the disclosure of an informer's identity. The policy yields in certain cases, however, such as where disclosure is relevant and helpful to the defense of an accused or is essential to the fair determination of the cause. Roviaro v. United States of America (1957), 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639. In the Glover case *842 (supra) the State's witness, on re-direct examination, testified that he had the assistance of an informer in establishing both the guilt and the identity of the accused. When this revelation was made to the jury, the accused had a right to attack both the testimony and its source which, in fact, was hearsay, since it is repetitive of statements of a party not a witness. It is because the hearsay went to matters in issue that the accused's right to disclosure was given precedence over the general policy of nondisclosure. Here, however, the testimony concerning the informer merely revealed that the surveillance of the premises was undertaken by reason of an informer's tip. It in no way related to any matter in issue. It did not in any manner bolster the prosecution's case. The assistance of the informer merely served to alert the witness to a possible crime yet to be perpetrated. The crime was then committed in the presence of the witness. Knowledge of the identity of the informer could serve no purpose useful to the defendant's defense, and the disclosure to the jury of the reason the victimized pharmaceutical house was under surveillance had no bearing upon any issue. The testimony implicating the defendant would have been the same, had it been mere chance that the police witnessed the defendant's participation in the crime. The Glover rule, therefore, simply has no application."
Further, the United States Supreme Court stated in Roviaro v. United States of America, 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957):
"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."
In the case we have before us, four factors lead to the conclusion that disclosure of the informant's identity and an opportunity to cross-examine such informer were not required. First, the facts of this case are different from Glover v. State, supra, in that the informer did not give assistance "in establishing both the guilt and the identity of the accused." In fact, he did neither. Based upon the informer's information as to the persons present in the house, the police independently discovered that two of those persons were wanted on arrest warrants. Secondly, the State has shown that it has a substantial interest in nondisclosure of the informant's identification. It would jeopardize pending cases; it would render this particular informer useless in further investigations. Thirdly, there is a real risk that this informer's life would be endangered.
For these reasons, the trial court properly denied Appellant's motion to disclose the identity of the informer.

III.
The Appellant challenges the sufficiency of the evidence to prove beyond a reasonable doubt to show the unlawful possession of a dangerous drug. The pertinent sections of the Indiana Dangerous Drug Act are:
"35-3333 * * * Acts prohibited.  The following acts, the failure to act as hereinafter set forth, and the causing of any such act or failure are hereby declared unlawful except as provided in IC 1971, 16-6-8-4 [§ 35-3334]:
* * * * * *
"(c) The possession or use of a dangerous drug or a precursor by any person unless such person obtains such drug on the prescription of a practitioner or in accordance with subparagraph a(2) of IC 1971, 16-6-8-3 [§ 35-3333]. * * *" *843 "35-3332 * * * Definition.  As used in this chapter (§§ 35-3331 - 35-3340], unless, the context otherwise requires:
"(a) `Person' means corporation, association, partnership or one or more individuals.
* * * * * *
"(j) `Dangerous drug' means * * * or (5) any drug appearing on the lists of drugs under schedules I, II, III and IV of the Controlled Substances Act, 21 U.S.C. sec. 812, Pub.L. no. 91-513, sec. 202(c), and any drugs included therein by duly promulgated regulation; * * *."
"35-3337. Exceptions need not be negatived  Burden of proof.  In any complaint, information, affidavit, or indictment, and in any action or proceeding brought for the enforcement of any provision of this act [§§ 35-3331 - 35-3339], it shall not be necessary to negative any exception, excuse, proviso, or exemption contained in this act, and the burden of proof of any such exception, excuse, proviso or exemption, shall be upon the defendant. [Acts 1961, ch. 45, § 7, p. 81.]"
Our Supreme Court in Thomas v. State, Ind., 291 N.E.2d 557 (1973), has held that possession of narcotics (dangerous drugs here) need not be exclusive to support a conviction and that possession can be constructive possession, (at p. 558), and 25 Am.Jur.2d Drugs, Narcotics and Poisons § 21 (1966).
In Thomas, supra, citing People v. Fox, 24 Ill.2d 581, 182 N.E.2d 692 (1962), our Supreme Court adopted the definition of "constructive possession" as defined in the Fox case, namely, that consists of "an intent and capability to maintain control and dominion over a chattel" (in Thomas the chattel was heroin, here it was methamphetamine).
The facts viewed in a light most favorable to the Appellee-State reveal that the five persons were found in a rear bedroom, to which entry could only be gained by walking through the adjoining bedroom where the drugs were found lying on a mirror on a mattress. Appellant attempted to prevent entry into the house by the police officers. Appellant gave his address when arrested as 3715 North Guion Road which were the premises involved here. Thus, Appellant exerted dominion and control over the house and its contents and therefore possessed the drugs in question via the doctrine of constructive possession.
Our Supreme Court has held that proof beyond a reasonable doubt of facts constituting constructive possession is adequate. Thomas v. State, supra.
For the above reason the trial court did not err in finding Appellant possessed the drugs in question in violation of Indiana Statutes.
It should be noted that no constitutional challenge is made to any part of the Indiana Dangerous Drug Act, including the sections above quoted.

IV.
The Appellant makes a generalized charge of variance between the pleadings and proof and also challenges the sufficiency of evidence but cites no authority whatsoever in regard to either. We could simply find a waiver under authority of Kissinger v. State, 255 Ind. 283, 263 N.E.2d 646 (1970), and Williams v. State, Ind., 294 N.E.2d 793 (1973). In this context Appellant makes an artful attempt to context the testimony of the two police officers, one who testified on the pre-trial motion to suppress and the other who testified at the trial. It is elementary that the trial court will weigh evidence and determine credibility and we will not on appeal. We will also consider the evidence most favorable to the state to determine if the charge has been proven beyond a reasonable doubt.
In this regard a police chemist, properly qualified as an expert testified *844 that the substance found at said residence was methamphetamine and further testified that it was listed in Schedule II of the Federal Controlled Substances Act. Even in the absence of direct testimony that methamphetamine was listed on said Schedule II, the court could take judicial notice of it. Skaggs v. State, Ind., 293 N.E.2d 781 (1971).
Careful consideration of these assertions of the Appellant demonstrate they are without merit.
Since no reversible error has been demonstrated we affirm the decision of the trial court.
HOFFMAN, C.J., concurs.
STATON, J., dissents with opinion.
STATON, Judge (dissenting).
My dissent is directed solely to the warrantless search by the police. My reasons for dissenting are:
1. No exigent circumstances existed.
2. The substance on the mirror in the southside bedroom was not inadvertently found by the police.
3. None of the other exceptions were shown by the State to have existed which would have validated a warrantless search.
An arrest warrant cannot be substituted for a search warrant. The police have bypassed the safeguard of an objective determination of probable cause by a detached, neutral magistrate and substituted their discretion for that of the courts. Warrantless searches justified by hindsight probable causes are fraught with bottomless pitfalls. My retrenchment follows.
The Fourth Amendment to the United States Constitution would be reduced to a nullity if a police officer is permitted to make the assessment of evidence and determine probable cause to justify a warrantless search in retrospect. Mr. Justice Jackson, writing for the United States Supreme Court in Johnson v. United States (1948), 333 U.S. 10, 13-14, 68 S.Ct. 367, 369, 92 L.Ed. 436, stated:
"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers... . When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent."
REASON ONE: No exigent circumstances existed. The house had been under surveillance by the police for several weeks. Only one-half hour before the search, a police informant told the police the location of drugs which were being "cut" or diluted. This activity was occurring in the upstairs, southside bedroom of the house. He further advised them of two men present who had arrest warrants out on them. Under the pretext of searching for these two men, the search for the drugs was initiated. There is no evidence that the police had any reason to believe that the drugs being "cut" or diluted upstairs in the bedroom were going to be taken out of the house immediately or the next day. There is no evidence that anyone in the house knew that the "heat was on" and suspected a visit from the police. United States v. Doyle (5th Cir.1972), 456 F.2d 1246. Only one-half hour was spent *845 by the police in trying to obtain a search warrant. The men who had arrest warrants out on them could have been arrested by the police when and if they attempted to leave the house. Nothing in the evidence indicates that this could not have been done without the knowledge of the other occupants in the house. Trupiano v. United States (1948), 334 U.S. 699, 704, 68 S.Ct. 1229, 92 L.Ed. 1663.
The United States Supreme Court stated in Coolidge v. New Hampshire (1971), 403 U.S. 443, 471, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564, that:
"If the initial intrusion is bottomed upon a warrant that fails to mention a particular object, though the police know its location and intend to seize it, then there is a violation of the express constitutional requirement of "Warrants ... particularly describing ... [the] things to be seized." The initial intrusion may, of course, be legitimated not by a warrant but by one of the exceptions to the warrant requirement, such as hot pursuit or search incident to lawful arrest. But to extend the scope of such an intrusion to the seizure of objects  not contraband nor stolen nor dangerous in themselves  which the police know in advance they will find in plain view and intend to seize, would fly in the face of the basic rule that no amount of probable cause can justify a warrantless seizure."
In the present case, after the intrusion and arrest of Ludlow at the door, the police ran immediately upstairs to the bedroom where they had been told the drugs were being "cut." They had a reliable informant. Their probable cause did not justify a warrantless search.
In Katz v. United States (1967), 389 U.S. 347, 358-359, 88 S.Ct. 507, 515, 19 L.Ed.2d 576, Mr. Justice Stewart, delivering the opinion for the Court, stated:
"The Government does not question these basic principles. Rather, it urges the creation of a new exception to cover this case. It argues that surveillance of a telephone booth should be exempted from the usual requirement of advance authorization by a magistrate upon a showing of probable cause. We cannot agree. Omission of such authorization
`bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the ... search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment.' Beck v. State of Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142.
And bypassing a neutral predetermination of the scope of a search leaves individuals secure from Fourth Amendment violations `only in the discretion of the police.' Id., at 97, 85 S.Ct. at 229."
REASON TWO: "Inadvertently Discovered." The majority opinion attempts to justify the search for the drugs by suggesting that they were inadvertently discovered by the police. This is dispelled by the prior knowledge of their exact location before the intrusion. The plain view doctrine has no application to these facts. Chimel v. California (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 is more restrictive. There is no evidence that there was a security risk to the officers. The rationale of the plain view doctrine is explained in Coolidge v. New Hampshire, supra, 403 U.S. at 467, 91 S.Ct. at 2038:
"The rationale for the `plain view' exception is evident if we keep in mind the two distinct constitutional protections served by the warrant requirement. First, the magistrate's scrutiny is intended to eliminate altogether searches not based on probable cause. The premise here is that any intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity. See, e.g., McDonald v. United States, *846 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; Warden v. Hayden, 387 U.S. 294, 87 S.Ct 1642, 18 L.Ed.2d 782; Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; Chimel v. California, 395 U.S., at 761-762, 89 S.Ct., at 2039. The second, distinct objective is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the `general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, explanatory rummaging in a person's belongings. See, e.g., Boyd v. United States, 116 U.S. [616] at 624-630, 6 S.Ct., at 528-532 [, 29 L.Ed. 746]; Marron v. United States, 275 U.S. 192, 195-196, 48 S.Ct. 74, 75-76, 72 L.Ed. 231; Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431. The warrant accomplishes this second objective by requiring a `particular description' of the things to be seized.
"The `plain view' doctrine is not in conflict with the first objective because plain view does not occur until a search is in progress. In each case, this initial intrusion is justified by a warrant or by an exception such as `hot pursuit' or search incident to a lawful arrest, or by an extraneous valid reason for the officer's presence. And, given the initial intrusion, the seizure of an object in plain view is consistent with the second objective, since it does not convert the search into a general or exploratory one. As against the minor peril to Fourth Amendment protections, there is a major gain in effective law enforcement. Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous  to the evidence or to the police themselves  to require them to ignore it until they have obtained a warrant particularly describing it.
"The limits on the doctrine are implicit in the statement of its rationale. The first of these is that plain view alone is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent `exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure. Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951; Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; Jones v. United States, 357 U.S. 493, 497-498, 78 S.Ct. 1253, 1256-1257, 2 L.Ed.2d 1514; Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828; Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663." (My emphasis).
People v. Block (1971), 6 Cal.3d 239, 103 Cal. Rptr. 281, 499 P.2d 961 is easily distinguished. The sole object of Officers Galloway and Marco was to investigate a possible narcotic suspect at a specific address. Once there, they found a "pot party" in progress. There were pipes on the table and the odor of marijuana. After arresting six of the persons present, it was reasonably obvious that more persons could be involved. The stairway was illuminated. These and other facts were justification for the evidence later found upstairs. Perhaps the most obvious distinction is the one made by Justice Burke in his concluding remarks in People v. Block, supra, 103 Cal. Rptr. at 285, 499 P.2d at 965.
"We conclude that since Officer Galloway believed in good faith that additional participants in a felony might be on the premises, and since that belief was a reasonable one, based upon facts from which he could reasonably infer the presence of such additional suspects, the *847 search he conducted was a lawful one and authorized the seizure of contraband found in plain sight during the course of that search."
There is a strong inference here that the police did not conduct their search in good faith.
REASON THREE: "Other Exception." Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment. Coolidge v. New Hampshire and Katz v. United States, supra. This rule is subject to only a few exceptions. The State has the burden of proof to establish these exceptions. United States v. Jeffers (1951), 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59; Coolidge v. New Hampshire, supra; Katz v. United States, supra. The record does not reflect any consent to the search. Zap v. United States (1946), 328 U.S. 624, 628, 66 S.Ct. 1277, 90 L.Ed. 1477. No emergency is shown by the evidence. United States v. Jeffers, supra. Ludlow was not attempting to flee the premises. Warden, Maryland Penitentiary v. Hayden (1967), 387 U.S. 294, 298-299, 87 S.Ct. 1642, 18 L.Ed.2d 782; Johnson v. United States, supra, 333 U.S. at 15, 68 S.Ct. 367. There is no evidence that the police had reason to believe that the drugs were about to be destroyed before the intrusion. Schmerber v. California (1966), 384 U.S. 757, 770-771, 86 S.Ct. 1826, 16 L.Ed.2d 908; United States v. Doyle, supra; United States v. Jeffers, supra; McDonald v. United States (1948), 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153. Nothing in the evidence indicates that the drugs were about to be removed. Chapman v. United States (1961), 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828; Johnson v. United States, supra; United States v. Jeffers, supra; United States v. Doyle, supra.
None of the above exceptions were established by the State. The search is per se unreasonable. Therefore, the judgment of the trial court should be reversed with instruction to grant Ludlow a new trial.