McCORD, Judge
(dissents) :
I respectfully dissent. The defendant’s motion to suppress is supported only by the testimony of U. S. Navy investigator, Arnold and CPO Kovalycsik, who accompanied him. Investigator Arnold suspected defendant, a Navy man, of using marijuana so they went to his home, a house trailer, on a morning after defendant had been working all night. They knocked on his door, waking him, and told him they wanted to talk to him. Investigator Arnold asked him to get dressed for a trip back to Corry Field to his office. Investigator Arnold testified that when defendant went to get dressed, the door was partially open and he and Kovalycsik stepped inside the living room to wait for him. (He did not mention any invitation to come inside.) Kovalycsik testified that defendant said for them to come on in while he got dressed. Arnold testified that during the time defendant was out of the room getting dressed he noticed a brown paper bag near the center of the living room floor that had two plastic bags in it that are commonly used to transport marijuana; that he reached over and picked up the two bags and noticed that they did have what appeared to be marijuana in them and he carried them with him. Kovalycsik testified that while defendant was gone, Arnold “noticed the container of that which is used — the type that contains marijuana, the plastic bag, little baggies.”
When they got back to the office at Cor-ry Field, Arnold began questioning defendant. Arnold was asked the following regarding his interrogation:
“Q. Did he ever admit that he smoked marijuana until you showed him what appeared to be debris from marijuana which you had in the bag ?
A. He saw this in the trailer, and I’m sure I laid it down on my desk while I was questioning him, and we probably referred to it during the conversation.”
With that predicate, defendant admitted he had smoked marijuana.
After additional interrogation, defendant consented to his house trailer being searched. The predicate for the consent is the following colloquy between defense counsel and Arnold:
“Q. Now, I believe before he gave you his consent to search, you had shown him what appeared to be debris from marijuana and indicated that that might constitute probable cause on which a search warrant could be issued ?
A. Right, sir. I didn’t tell him that I knew that’s what would happen because I didn’t know. . . . ”
The subsequent search resulting from the consent brought forth more, marijuana.
We must first look to the initial seizure of the residue of marijuana in the plastic bags in the paper trash bag. If it was an unlawful seizure, the subsequent admission by defendant and consent to further search *9 will fall as all is tainted with the initial seizure (fruit of the poison tree doctrine).
At another point in his deposition, Arnold testified with regard to this initial seizure as follows:
“A. It was a trash bag, more-or-less where it appeared that they had used— somebody had used to throw their trash, you know, as a wastepaper bag. It looked like they had probably swept and cleaned up the trailer a little bit, I can’t recall. Anyway, it was a trash bag is what it had been used for, I’m sure.
Q. Was there anything visible in the bag, just by casually looking in the bag, could you tell what was in it ?
A. By casually looking down in the bag, I saw the plastic bag, and from my experience I recognized what it was. There was other trash in the bag, also.”
At no time did Arnold testify that he saw anything in the plastic bags until he removed them from the trash bag.
We are thus confronted with an application of the “plain view doctrine” to the facts present here which appellant contends justified seizure of the residue of marijuana contained in the plastic bags. A leading U. S. Supreme Court case on the subject is Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. It and other cases interpreting the doctrine reveal that certain elements must be present before evidence in plain view may be seized. First, the officer must be in a place where he lawfully has a right to be. Second, the seized object must be seen inadvertently (else the officer should have obtained a search warrant to conduct a search for particular evidence). Third, the object seized must have some nexus to criminal activity. Unless these elements are present, the plain view doctrine cannot operate to validate a seizure of evidence without a search warrant.
Here, we must assume the officers were legally inside defendant’s trailer at the time of the seizure. Kovalycsik testified that the defendant told them to come inside while he dressed. There is no evidence to the contrary.
As to the second element, that'the object seized must have been seen inadvertently, the record clearly reveals that the marijuana was not seen until Arnold removed the plastic bags from the trashbag. The trash-bag was in the center of the room when they went inside. At most, only the trash-bag, the two plastic bags inside of it and the other trash in the bag were visible to the investigators. The residue of marijuana in the plastic bags was not in plain view or visible and was not revealed until Arnold conducted a search of the trash bag by removing the plastic bags therefrom and examining them. The court judicially knows that plastic bags (baggies) are commonly used to hold many things other than marijuana. Such a bag does not have a nexus to criminal activity, per se, though it as well as many other such commonly used articles may be used in connection with criminal activity. The sight of these two plastic bags combined with previous information Arnold may have had about defendant may have satisfied probable cause for the issuance of a search warrant to search the trailer but it does not meet the plain view test. The marijuana was not seen inadvertently but was seen when the search of the trashbag was conducted.
In Coolidge, supra, the Supreme Court points out that “it is accepted, at least as a matter of principle, that a search or seizure carried out on a suspect’s premises without a warrant is per se unreasonable, ^unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of exigent circumstances.” In Coolidge the Supreme Court said further:
“ . . . Mr. Justice Bradley’s admonition in his opinion for the Court almost a century ago in Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L. *10 Ed. 746, 752, is worth repeating here: ‘It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.’
Thus, the most basic constitutional rule in this area is that ‘searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.’ Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576, 585. The exceptions are ‘jealously and carefully drawn,’ Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514, 1519, and there must be ‘a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.’ McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153, 158. ‘[T]he burden is on those seeking the exemption to show the need for it.’ United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59, 64. In times of unrest, whether caused by crime or racial conflict or fear of internal subversion, this basic law and the values that it represents may appear unrealistic or ‘extravagant’ to some. But the values were those of the authors of our fundamental constitutional concepts. In times not altogether unlike our own they won — by legal and constitutional means in England, and by revolution on this continent — a right of personal security against arbitrary intrusions by official power. If times have changed, reducing everyman’s scope to do as he pleases in an urban and industrial world, the changes have made the values served by the Fourth Amendment more, not less, important.”
The exigent circumstance which the state here contends for is that the marijuana was in plain view of the Navy investigators, but the record shows otherwise. Although the plastic bags may have been in plain view, the marijuana debris in them was not. Plastic bags in and of themselves have no per se nexus to criminal activity. If the investigator had been able to explain that there was something about these particular bags that distinguished them from other plastic bags and thereby gave them a nexus to criminal activity (marijuana), perhaps we would have a different situation on this point, but the state did not meet its burden of proof in such regard. The investigator merely testified: “I noticed a brown paper bag near the center of the living room floor that had two plastic bags in it that is commonly used to transport or carry marijuana,” — and as previously quoted above: “By casually looking down in the bag, I saw the plastic bag, and from my experience, I recognized what it was.” From his experience, he may have felt that he had probable cause to believe the plastic bag may have been used for carrying marijuana, but he was not authorized by probable cause to conduct this search without a warrant. I would affirm the order of the trial judge.