860 F.2d 1080
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joyce Phillips BLACK, Defendant-Appellant.
 No. 88-5266.
 United States Court of Appeals, Sixth Circuit.
 Oct. 14, 1988.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and RICHARD B. McQUADE*, Jr., District Judge.
 PER CURIAM.
 
 
 1
 This case involves a search and seizure of cocaine. Defendant, Joyce Phillips Black, was found unconscious on an airplane. In an effort to find identification or medication, a police officer searched the defendant's purse, which contained cocaine, crack, and drug paraphernalia. Later, the emergency room doctor discovered a container of crack in one of the defendant's body cavities. This discovery occurred while the defendant was still unconscious and her condition had not been conclusively diagnosed.
 
 
 2
 The defendant contends that all evidence from these latter two searches should be suppressed, asserting that the second search of her purse was conducted without a warrant and was not covered by a valid exception. She also asserts that Dr. Roberts' vaginal examination was conducted at the request of a police officer and constituted "governmental action" subject to fourth amendment requirements.
 
 
 3
 Black was found unconscious on an airplane arriving at the Greater Cincinnati Airport at 6:30 a.m. When airline personnel were unable to awaken the defendant, a paramedic was summoned. Airport police officer David Bunning also responded to the dispatcher's call for assistance in what was deemed to be a possible drug overdose situation.
 
 
 4
 While the paramedic was checking the defendant's vital signs he asked Bunning to check the defendant's purse for any medical information, medication, or identification. The paramedic testified that "[a]n unknown, unconscious person, [is] a life-threatening situation because you don't know what the problem is."
 
 
 5
 Bunning located the defendant's purse, which had been placed in a wheelchair in the front of the plane. He looked in her wallet and found pieces of identification reflecting several different names. He found a single Empirin tablet and a prescription bottle containing antibotics. Bunning gave these to the paramedic and continued to look in the purse for positive identification. He located and opened a cigarette case,[1] which contained "small rock-like crystals." Bunning did not immediately recognize that the "crystals" were crack. He did not search any further at this juncture.
 
 
 6
 The defendant and her belongings were then transported to Booth Hospital. Bunning, who accompanied the defendant to the hospital, was asked by the emergency room nurse to try to find some specific identification of the defendant, or at least to locate something that would identify her medical problem. Bunning went back to the purse and opened a side pocket, in which he found an envelope containing what he did believe was cocaine. He immediately notified the nurse of his discovery. Bunning then emptied the contents of the purse and found several pipes used for smoking crack.
 
 
 7
 During this time, the unconscious defendant was being examined by Dr. James Roberts. Dr. Roberts believed that the defendant's symptoms were consistent with drug overdose but could not determine the exact cause of the overdose. Dr. Roberts conducted a thorough physical exam of the defendant, during which he palpated a hard, round object in the rectum or vagina. After taking an x-ray, Dr. Roberts conducted a manual vaginal examination and found a "lemon-sized ... green plastic wrap with ... approximately a dozen irregular-shaped hard objects wrapped up inside it." A trained medical toxicologist, Dr. Roberts identified these objects as pieces of crack.
 
 
 8
 Dr. Roberts testified that the police did not instruct him to conduct an internal examination of the defendant, and that such an examination was a standard procedure when treating an unconscious person. Officer Bunning testified that he did not request, participate in, or view the examination by Dr. Roberts.
 
 
 9
 The defendant subsequently was indicted for possession with the intent to distribute crack and cocaine. Defendant's motion to suppress evidence was referred to a magistrate, who conducted an evidentiary hearing and recommended that the motion be denied. The district court adopted the magistrate's report and denied defendant's motion.
 
 
 10
 The defendant then entered a conditional guilty plea, preserving the search and seizure issues for appeal.
 
 A. Search of Defendant's Purse
 
 11
 The defendant contends that Officer Bunning's warrantless search of her purse violated the fourth amendment's prohibition against unreasonable searches and seizures. While the fourth amendment does not bar all warrantless searches, the State bears the burden of justifying such a search. United States v. Jeffers, 342 U.S. 48, 51 (1951).
 
 
 12
 The State claims that the instant search was required to deal with a life-threatening emergency. See Mincey v. Arizona, 437 U.S. 385, 392 (1978) (stating that " '[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency' ") (quoting Wayne v. United States, 318 F.2d 205, 212 (D.C.Cir.), cert. denied, 375 U.S. 860 (1963)). Although Mincey states that there is no blanket emergency exception to the search warrant requirement, the State clearly presented sufficient evidence to carry its burden in this case.
 
 
 13
 It is reasonable for a police officer to search the effects of an unconscious person in an effort to determine the person's identity or any evidence of medical history which might be useful in treatment. See, e.g., United States v. Dunavan, 485 F.2d 201, 205 (6th Cir.1973); Vauss v. United States, 370 F.2d 250, 251-52 (D.C.Cir.1966); see also W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment Sec. 5.4(c) (1987).
 
 
 14
 In Dunavan, passersby found the defendant in a disabled car, foaming at the mouth and unable to talk. Police arrived at the scene and arranged for transportation of the defendant to a hospital, after which the passersby turned over to the police two locked briefcases they had found in the car. In the belief that the briefcases might contain some information as to the defendant's identity or which might be relevant to hospital personnel in determining the nature of the defendant's condition and the best means of treating it, the police obtained the key and opened the briefcases. Therein they found a substantial sum of money which had been taken in a recent bank robbery. Concluding that the search of the cases was not a pretext but rather was done "as a matter of rendering emergency aid to a person in a seizure," the court held that the search was lawful and that the money was thus admissible in evidence.
 
 
 15
 Here, Officer Bunning was not motivated by a suspicion of criminal activity when asked by the paramedic to look for identification or medications to assist in a diagnosis of defendant's condition. His first search of the purse was conducted in an attempt to help in an emergency situation and defendant does not contend otherwise. Similarly, the second search was conducted at the request of the emergency room nurse. Under the circumstances, this second search was not unreasonable. Since the defendant had not been conclusively diagnosed and was still unidentified, the second search does not violate constitutional principles even without a warrant. It was not error to decline to suppress the evidence found in the purse (cocaine, crack, and other drug paraphernalia).
 
 B. Search of Defendant's Body
 
 16
 The defendant contends that Dr. Roberts' search of the defendant's body cavity was "government action" so as to make it an illegal search and seizure. We disagree. A person will not be held to have acted as a police agent merely because there was some prior contact between that person and the police. United States v. Coleman, 628 F.2d 961, 965 (6th Cir.1980).[2] To prevail on her claim, defendant must show: (1) the police have instigated, encouraged, or participated in the search, and (2) the individual must have engaged in the search with the intent of assisting the police in their investigation efforts. United States v. Lambert, 771 F.2d 83, 89 (6th Cir.), cert. denied, 474 U.S. 1034 (1985).
 
 
 17
 Both Bunning and Dr. Roberts testified that the police did not request or view the examination. Instead, the record indicates that Dr. Roberts performed a routine but necessary medical examination of the defendant in an effort to form a conclusive diagnosis and render appropriate treatment for defendant's own benefit. A combination of palpation and an x-ray led to the search. Moreover, Dr. Roberts testified that he suspected a drug overdose and that a pelvic and rectal examination are standard when such an unconscious patient is involved.[3]
 
 
 18
 There is ample evidence that the examination was standard and not unusual under the circumstances and was not instigated by Officer Bunning. We conclude, therefore, that there was no error in the determination that Dr. Roberts' search was a private action. Thus, the crack discovered during the examination of the body cavity should not be suppressed.
 
 
 19
 We accordingly AFFIRM the defendant's conviction in all respects.
 
 
 
 *
 The HONORABLE RICHARD B. McQUADE, Jr., United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Bunning testified that the reason he opened the cigarette case was because he had seen situations where people carried their driver's license in their cigarette case
 
 
 [2]
 Courts have, however, extended the requirement of obtaining a search warrant to searches by independent persons who act in collusion with, or at the behest of, government officials. United States v. Gibbons, 607 F.2d 1320 (10th Cir.1979)
 
 
 [3]
 Dr. Roberts testified that "there is a well-known condition of body packing that is very popular in some areas for smuggling drugs and I always bring up the fact that those things should be again looked for in someone you think may have a drug overdose." He added that body packing can cause a life-threatening medical condition "[b]ecause if there's a package that's inside the body that ruptured and the drug gets absorbed, it's frequently fatal."