**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 08a0665n.06**
**Filed: November 3, 2008**

**No. 07-6464**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| EDDIE PILLOW, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CITY OF LAWRENCEBURG, | ) | MIDDLE DISTRICT OF TENNESSEE |
| TENNESSEE, ET AL. | ) | |
| | ) | |
| Defendants-Appellants. | | |

Before: BATCHELDER, CLAY, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Officer David Russ appeals the district court's denial of his motion for summary judgment, arguing that he is entitled to qualified immunity from this § 1983 claim. We affirm in part and reverse in part.

I.

On the afternoon of May 17, 2006, Officer David Russ, a narcotics detective for the Lawrenceburg Police Department, was on traffic patrol when he heard loud music coming from Eddie Pillow's vehicle. Russ stopped the car, told Pillow why (excessive noise from a motor vehicle in violation of Tenn. Code § 55-8-193) and asked Pillow to exit the car.

After Pillow left the car, Russ engaged him in conversation while running a check on his

driver's license. At some point, Russ asked Pillow if he could search his car, and Pillow refused. Although the license check indicated that Pillow's license was valid and that no outstanding warrants existed for his arrest, Russ called the Lawrenceburg Police K-9 officer, Michael Kilpatrick, and asked him to bring a narcotics dog to conduct a dog-sniff inspection of Pillow's vehicle. Russ then returned to his vehicle to write up a citation for Pillow, at which point he realized he did not have any citation forms, requiring him to wait until a nearby officer could bring him the required forms. "Within a few minutes," an officer arrived bearing the extra forms, JA 81, and "three to five minutes" after that, JA 143, Kilpatrick arrived on the scene and began the dog-sniff inspection of Pillow's vehicle.

Before Russ had filled out Pillow's citation, Kilpatrick informed him that the narcotics dog had given a "strong positive indication for the presence of drug odor" on Pillow's front passenger-side door. JA 82. The officers searched the interior of Pillow's car but did not find any drugs. After further inspection and after the narcotics dog alerted on the driver's seat, Russ searched Pillow.

The parties dispute the scope of that search. Russ claims that, after securing Pillow's consent for the search, he "conducted a pat-down of Mr. Pillow for weapons and asked him to empty his pockets," JA 83, and felt around Pillow's waist and pulled back the top of Pillow's shorts and underwear to conduct a visual inspection. Pillow claims that Russ's search of his person was far more invasive: He claims that Russ made him remove his shirt, shoes and socks and used his fingers to probe Pillow's anus. Whatever its scope, the search of Pillow did not disclose any narcotics. Russ eventually issued Pillow a citation, and Pillow left the area.

Pillow filed this lawsuit in federal court against Russ and the City of Lawrenceburg. He raised a § 1983 claim against the City, contending that Russ's behavior was the product of a pattern and practice on the part of the Lawrenceburg Police Department. He raised a series of § 1983 claims against Russ, contending that Russ violated his Fourth Amendment rights in several distinct ways, and he sought relief for state-law battery, false imprisonment and intentional infliction of emotional distress. The district court granted summary judgment to the City, but it denied qualified immunity to Russ on each of the federal claims. Russ filed this interlocutory appeal.

## II.

As best we can tell from his complaint and pleadings, Pillow alleges that Russ violated the Fourth (and Fourteenth) Amendment's prohibition on unreasonable searches and seizures at five distinct points during this encounter: (1) the initial traffic stop, (2) the dog sniff of his vehicle, (3) the search of the interior of his car, (4) the initiation of the search of him and (5) the scope of the search of him. When a plaintiff raises serial violations of his constitutional rights, we separately analyze each of them. *See Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008); *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). To overcome an officer's claim of qualified immunity, a plaintiff must demonstrate (1) that the officer violated a "constitutional right" and (2) that the right was "clearly established" at the time of the officer's actions. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

In reviewing interlocutory appeals from the denial of a claim of qualified immunity, we must read the record in favor of the claimant and thus must draw all reasonable factual inferences in his favor. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 309–310 (6th Cir. 2005). To the extent an argument in this setting merely quibbles with the district court's *factual* assessment of the record, we do not have jurisdiction to review it. *See Johnson v. Jones*, 515 U.S. 304, 319–320 (1995). In this instance, Officer Russ raises several arguments that can only be described as mere challenges to the district court's reading of the summary-judgment record, and accordingly we do not review them. What remains are the following *legal* contentions that, even when all factual inferences are drawn in Pillow's favor, Russ either did not violate a constitutional right or did not violate a clearly established constitutional right.

## A.

Was the traffic stop an unreasonable seizure? No. "A police officer legally may stop a car when he has probable cause to believe that a civil traffic violation has occurred." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). And Tenn. Code Ann. § 55-8-193(a) makes it a misdemeanor for any person to operate a "sound amplification system . . . from within the motor vehicle so that the sound is plainly audible at a distance of fifty (50) or more feet from the vehicle." Pillow admits that Russ was more than 50 feet away when he first heard loud music coming from Pillow's car. On these facts, Russ had probable cause to believe that Pillow was violating the excessive-noise statute, entitling him to qualified immunity from a claim that the traffic stop itself violated Pillow's constitutional rights.

B.

Was the dog sniff of the exterior of Pillow's vehicle an unreasonable search? No. So long as the police have not unreasonably extended the length of a stop beyond the time necessary to write a ticket and conduct ordinary inquiries incident to the stop, "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Illinois v. Caballes*, 543 U.S. 405, 410 (2005); *cf. United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999).

On the undisputed facts of this case, the dog sniff did not unduly prolong the length of the stop. Russ summoned Kilpatrick to the scene after receiving the results of the license check and before he walked back to his vehicle to write up Pillow's citation. But because Russ did not have any citation forms, he could not begin filling out the citation until a fellow officer brought him extra forms. In his deposition, Pillow testified that Kilpatrick arrived "three to five minutes" after the officer brought the needed form to Russ—and thus only "three to five minutes" after Russ could have begun filling out Pillow's citation. Pillow acknowledges that Kilpatrick arrived on the scene while Russ was still writing his citation and does not contest Russ's claim that Kilpatrick informed him about the narcotics dog's positive alert on Pillow's vehicle "before [Russ] had completed the citation." JA 81. On this record, it thus is clear that the dog sniff started and stopped while Russ was still completing Pillow's citation, confirming that the sniff did not unreasonably extend the length of the stop.

- 5 -

While Pillow complains about the length of time it took Russ to write him a citation, he has failed to come to terms with the undisputed fact that this delay arose from the absence of a citation form. Even at that, the delay was (1) brief because, as Pillow admits, it took just "a few minutes" before the other officer arrived with the necessary form, JA 91–92, and (2) necessary to "complete [the] mission" of the stop, *Caballes*, 543 U.S. at 407, because issuing a citation is well within the bounds of a lawful traffic stop, *see Wellmam*, 185 F.3d at 656. Had the delay been longer, even for the purpose of getting the correct citation form, that might be another matter, one we need not resolve today. For today's purposes, it suffices that a good-faith delay of at most a few minutes to get a proper citation form does not unduly prolong a stop for Fourth Amendment purposes.

C.

Does Pillow have a cognizable claim that Russ violated his Fourth Amendment rights in searching Pillow's car? Yes. Russ argues that the narcotics dog alerted on Pillow's passenger front door and that this alert gave Russ probable cause to search Pillow's vehicle. But because Pillow testified that the narcotics dog did *not* alert on his car, Russ's argument does no more than quibble with the district court's factual reading of the summary judgment record. We thus lack jurisdiction to consider Russ's argument on this claim.

D.

Does Pillow have a cognizable claim that Russ violated his Fourth Amendment rights in initially searching Pillow?  Yes.  To start, Russ cannot justify the search as a permissible *Terry* frisk given the extent of the search, and indeed he makes no such argument (at least in connection with the search of Pillow's person).  *See United States v. Branch*, 537 F.3d 582, 589 (6th Cir. 2008).  Russ instead argues that the search was justified as being incident to an arrest.  *See Chimel v. California*, 395 U.S. 752, 755–56 (1969).  While the legal premise of this argument is correct, the factual premise is not.  Russ *never arrested* Pillow, so there was never any arrest to which the search could be incident.  The search-incident-to-arrest exception to the warrant requirement applies only when the police already have probable cause prior to the search, and a "formal arrest follow[s] closely on the heels of the challenged search."  *United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004) (internal quotation marks omitted) (alteration in original).  Because Pillow was never subjected to formal arrest, the exception does not apply.  *Cf. Sibron v. New York*, 392 U.S. 40, 63 (1968) ("It is axiomatic that an incident search may not precede an arrest *and* serve as part of its justification.") (emphasis added).

Russ adds that, even if the initial search of Pillow's person was unreasonable, he did not violate "clearly established" constitutional rights.  Br. at 35.  Not so.  "Over and again this Court has emphasized that the mandate of the [Fourth] Amendment requires adherence to judicial processes. Only where incident to a valid arrest, or in exceptional circumstances, may an exception lie, and then the burden is on those seeking the exemption to show the need for it."  *United States v. Jeffers*, 342

U.S. 48, 51 (1951) (internal quotation marks and citations omitted). Russ never arrested Pillow, and Russ failed to establish any exceptional circumstances (particularly when the factual inferences are construed in Pillow's favor) that would justify this search. In the final analysis, Pillow has invoked a clearly established legal premise for taking this claim to a jury, which has the province to do something we cannot: sort out the factual disputes between the parties.

E.

Does Pillow have a cognizable Fourth Amendment claim that the extent of Russ's search was unreasonable? Yes. Russ concedes that, under the circumstances, a digital search of Pillow's anus would have been unreasonable, and that is the end of the matter—at least at this summary-judgment stage of the case. Having conceded the validity of this legal claim, both as a matter of constitutional law and clearly established constitutional law, Russ is left to quibble over how to read the record in determining what happened during the search. We have no authority to entertain this type of dispute. So long as Pillow has come forward with plausible factual bases for a legitimate legal claim, he is entitled to take the claim to a jury. *See Scott v. Harris*, ___U.S.___, 127 S.Ct. 1769, 1776 (2007).

III.

For these reasons, we affirm in part, reverse in part and remand for further proceedings.